WALTER KING v. JOHN W. BERRY and BRANT VAN BLARCOM, Executors of WILLIAM BERRY, deceased.

The claim to a legacy is essentially an equitable and not a legal claim, and the character of the right is not altered by making it cognizable in the common law courts. It is an assignable interest, and the assignment passes the whole right of the assignor.

Is it barred by the statute of limitations ?—*Quere.*

Legatees who have assigned all their interest, are not necessary nor proper parties to a bill filed by the assignee for a recovery of the legacies.

The orphan's court and court of chancery have, to a certain extent, concurrent jurisdiction in reference to the accounts of executors, administrators and guardians ; but in all cases where a party seeks relief on grounds peculiarly of chancery jurisdiction, and which call for the exercise of chancery powers, the jurisdiction of chancery is paramount.*

THE bill, filed on the 29th day of November, A. D. 1831, states, that William Berry, late of Paterson, in the county of Essex, and state of New-Jersey, being seized and possessed of considerable real and personal estate, made and published his last will and testament, bearing date on the 7th day of January, A. D. 1826, and executed in due form of law, to the purport and effect following, that is to say : " Be it remembered, that I, William Berry, of Paterson, in the county of Essex, and state of New-Jersey, do make and publish this my last will and testament, in manner and form following, that is to say : First, it is my will, and I do hereby order and direct my executors herein

* Accord. *Salter* v. *Williamson,* ante, vol. i. page 480.

after named, to pay all my just debts and funeral expenses out of my personal estate. Item—It is my will, and I do hereby order and direct my executors, at or after my decease, to sell all my real and personal estate that I may be possessed of at my death : it is my will, and I do hereby empower my executors at or after my decease, to pay over to Robert Fields one hundred dollars. Item—I give, devise and bequeath unto my brothers, Daniel Berry and John Berry, and to my late wife's brothers, William Sumpter, John Sumpter and James Sumpter, and to my nephew Jonathan Berry, son of James Berry, deceased, and to John Sumpter and James Sumpter, sons of John Sumpter, all my estate, to have and to hold from and after my death ; the said Jonathan Berry, son of James Berry, deceased, to have two shares after an equal division is made of all my estate, subject, however, to the payment of legacies herein mentioned ; and in case I should outlive my brother Daniel, then it is my will, and I do hereby give, devise and bequeath his part or portion of my estate to the children of my brother Thomas Berry. Item—I give and bequeath unto the four daughters of my late brother, Samuel Berry, deceased, the sum of twenty-five dollars each ; and I give and bequeath unto Mary, the daughter of my late brother, James Berry, deceased, and to the daughter of my late brother, David Berry, deceased, the sum of fifty dollars each ; and I give and bequeath unto Nancy Chorton, wife of John Chorton, the sum of twenty-five dollars ; and I do hereby nominate, constitute and appoint, John W. Berry and Brant Van Blarcom, executors of this my last will and testament." The testator departed this life on the 12th day of February, A. D. 1826, leaving the said will unrevoked and in full force. That the executors therein named have duly proved the said will before the surrogate of the county of Essex, and taken upon themselves the execution thereof ; and by virtue thereof have possessed themselves of the testator's personal estate and effects to an amount far greater than sufficient to pay his debts and funeral expenses, and also entered into possession of his real estate, and into the receipt of the rents and profits thereof, and so continued until they made sale there-

of. That they exhibited into the surrogate's office of the county of Essex an inventory of the personal estate of the deceased, amounting to five thousand one hundred and seventeen dollars and sixteen cents, and that they afterwards made sale of two parcels of his real estate, the proceeds whereof amounted to two thousand two hundred and fifty dollars.

The bill further states, that all the legatees named in said will, except Robert Fields, resided in England, and that the complainant, by virtue of three several deeds of assignment, became the purchaser and legal owner of all the legacies, shares, rights and interests given and secured by the said will, except the legacy of one hundred dollars given to Robert Fields, and the legacy of twenty-five dollars given to Nancy Chorton, and is entitled to receive the same from the defendants.

That the said executors filed no account whatever of the said estate, until the complainant caused a citation to be issued out of the orphan's court of the county of Essex, returnable to the term of June, A. D. 1831, requiring them to exhibit their accounts; in obedience to which they filed separate accounts; and in the term of September then next, upon notice by them given for that purpose, they filed their final accounts as executors as aforesaid; to which accounts the complainant excepted in divers particulars, and the said exceptions are still pending undetermined. By the accounts so filed, there appeared a net balance, after the payment of all charges and commissions, in the hands of Brant Van Blarcom, one of the said executors, of three thousand five hundred and seventy-six dollars and sixty-five and a half cents; and in the hands of John W. Berry, the other of said executors, of three thousand and eighty dollars and seventy-five cents, in cash, and a bond for five hundred dollars, secured by mortgage, which remains uncollected, though considered good.

That the complainant hath given due notice of said assignments to the defendants, frequently applied to them and requested them to come to a full account with him of the said personal estate and of the proceeds of the sales of the real estate, and to pay over to him the clear surplus in their hands, to which he is enti-

[King v. Ex'rs of Berry.]

tled by virtue of the said assignments, and also to assign to him all the bonds and other securities remaining uncollected; which they refuse to do.

The bill further charges, that the accounts filed by the said executors in the surrogate's office of the county of Essex, are in many respects unjust and untrue; that there are divers mistakes, omissions and improper charges therein, to the prejudice of the complainant; that neither of the said executors hath charged himself with all the interest which have grown due, nor with all the rents of the real estate received by them. That they have charged themselves with no interest upon moneys of the estate received by them, and mingled with their individual funds, and used in their business; nor have they charged themselves with certain moneys deposited in bank in the life-time of the testator, and received by the said executors, nor with the interest accrued thereon.

The bill further states, that on the 10th day of December, A. D. 1830, the complainant, by his attorney, informed Brant Van Blarcom, one of the said executors, that powers of attorney had been forwarded for a part of the said legacies, and that if any of the moneys belonging to said estate were in jeopardy in the hands of his co-executor, that he was authorized to call upon him for security, and under certain circumstances to institute an action for the recovery of moneys in his hands; and that if the said Brant Van Blarcom neglected his duty in this respect, he would be held liable for all moneys lost through his co-executor. Insists that it was the duty of the said Brant Van Blarcom to see that all moneys that passed into the hands of his co-executor were properly secured; and that the complainant ought not to be subject to any loss by reason of the inability of the said John W. Berry to pay over the moneys of the estate received by him, but that the said Brant Van Blarcom ought to respond therefor.

The bill further charges, that the said executors have used the funds belonging to the said estate in their own private business, without any order of the orphan's court for that purpose, and without any security whatever being given or provided for the payment thereof. That the said John W. Berry is engaged

in an extensive manufacturing business in Paterson; that within two years the establishment with which he is connected has been very much embarrassed, and partially closed its business. That the said John W. Berry has disposed of a farm near Paterson, which he owned at the death of the testator, and that he is not now seized of any real estate in his own right, to the knowledge or belief of the complainant. That the estate of testator is not safe in the hands of said executors; and that they ought immediately to pay the same into the hands of a receiver to be appointed by the court, or into court, to be invested and disposed of under the order of the court, for the benefit of the complainant and others interested therein.

The bill further charges, that one C. B. Z. was indebted to the testator in a large sum of money, upon a bond secured by mortgage on a house and lot in the village of Aquackenonk; upon which the said executors, on the 21st day of January, 1830, obtained a decree for the foreclosure and sale of the mortgaged premises to pay and satisfy the sum of nine hundred and thirty-eight dollars and eighty-one cents, with seventy-one dollars and twenty-two cents costs. That in pursuance of said decree the mortgaged premises were exposed to sale, and on the 7th day of June, 1830, were struck off to one H. W. for seven hundred and sixty dollars, leaving a large balance of the mortgage debt unpaid, and which the mortgagor is unable to pay, and for which the said John W. Berry prays an allowance in his account as executor; that the premises were struck off to the said H. W. for the benefit of the said John W. Berry, who advanced the money required to be paid at the time of the sale, and that no deed has ever been delivered for the said premises, but that the said John W. Berry is authorized to take the said deed for his own benefit. That the premises at the time of the sale were worth the amount due on the mortgage, and that no allowance should be made to the executors for the pretended deficiency.

The bill prays an account; that interest be charged upon all moneys in the hands of the executors, and that the defendants may be decreed to pay to the complainant such sums as upon

such account shall appear due to him; and that in the mean time, the amounts severally admitted by the defendants to be in their hands, may be secured under the direction of the court, for the benefit of the parties interested therein; and that John W. Berry, one of the said executors, may be restrained by injunction from receiving any further part of the said estate.

Separate answers were filed by the defendants, and the cause came on for hearing upon the bill, answers, replication and proofs.

*E. B. D. Ogden* and *G. Wood*, for complainant.

*E. Vanarsdale*, for defendants.

Cases cited by complainant's counsel. *Toller on Ex.* 480–1; 1 *Bro. C. C.* 359; 1 *Vesey*, 294; 13 *Vesey*, 402; 1 *Serg. and R.* 241; *Griffith's Treat.* 193; *Rev. L.* 779; 1 *John. Chan. R.* 369, 527, 510, 624, 629; 4 *Ibid*, 303; 1 *Binney*, 199; *Chitty on B.* 10, 14; 2 *Atk.* 235; 8 *Wheaton*, 456–8.

Cases cited by defendants' counsel. 1 *Vesey*, 205; 1 *John. Chan. R.* 153; *Toller*, 482; 1 *Stark. Ev.* 335; 19 *Vesey*, 125; 4 *John. R.* 53; 1 *John. Chan. R.* 156; 1 *Pickering*, 81; 9 *Wheaton*, 532; 1 *Paine*, 620.

THE CHANCELLOR.   William Berry, late of Paterson, Essex county, died in 1826, leaving a considerable real and personal estate, and leaving a last will and testament, of which he had constituted the defendants executors.   They proved the will, and possessed themselves of the real and personal estate, to the amount of several thousand dollars.   By the will, the testator gave to Robert Fields one hundred dollars.   He then gave all his estate to his brothers, Daniel and John Berry; his late wife's brothers, William, John and James Sumpter; his nephew, Jonathan Berry, son of James Berry, deceased; John Sumpter and James Sumpter, sons of John Sumpter, deceased—in equal

7

shares; subject to the payment of certain legacies, viz.: to the four daughters of his late brother, Samuel Berry, deceased, twenty-five dollars each; to Mary, the daughter of his late brother, James Berry, deceased, and to the daughter of his late brother, David Berry, deceased, fifty dollars each; and to Nancy Chorton, twenty-five dollars. All the legatees reside in England, and this suit is brought by Walter King, who claims as an assignee for a valuable consideration, the right and interest of all of them except Robert Fields and Nancy Chorton.

The complainant charges in his bill, that the defendants neglected to render an account of the estate, until required by a citation from the orphan's court of the county of Essex. That they rendered separate and final accounts in 1831, which accounts are erroneous in divers particulars. That they have not charged themselves with the whole amount of the estate that came to their hands, nor with all the interest that accrued on it. He prays, among other things, for an account to be taken in this court, and that the defendants may be decreed to pay to him what, upon taking such account, shall be found justly due him.

The defendants do not admit the legality of the claim, but call on the complainant to establish it to the satisfaction of the court. They deny all charges of malfeasance, and insist that they are not bound to account for more interest than they have severally charged themselves with in their accounts as filed in the orphan's court; which accounts they allege to be correct, after excepting two errors, which they have particularized in their answers. And they assert their willingness to pay over the moneys to the person or persons legally entitled to receive it, under the direction of the court.

The first matter to be settled, is the right of the complainant to recover, and to recover in this suit as he has brought it, and as it is now presented to the court. The amount of the recovery, and the principles on which the executors are to be charged, are subjects that may claim our consideration hereafter.

The complainant is not a legatee himself. His rights are all derived from the assignments, and he must make it out, that the

[King v. Ex'rs of Berry.]

persons who have executed the assignments are the persons named in the will as the legatees. This he has done with sufficient certainty. Peter Berry, one of the witnesses, was a nephew of the testator. He came to this country from England about ten years ago, and was acquainted with all the legatees, whose interests are claimed by the complainant. He testifies to their existence at that time, and to the places where they lived. He does not fully prove the hand-writing of the assignors, so as perfectly to identify them in that way, and this is not indispensable. The persons who have signed the instruments are persons of the same name, all known to the subscribing witnesses, and therefore not fictitious; all, with a single exception, residing in the places mentioned by the witness; and in the absence of all proof, or even reasonable presumption to the contrary, it is not to be supposed that a deception has been practised, and that these persons are other or different from those who are named as legatees. So gross and extensive a fraud is not within the compass of probability, if it be at all possible.

The complainant is next bound to show a valid and sufficient assignment. There can be no question as to the form as well as the substance of the instruments. They are sufficient to pass the entire interest of the legatees. The consideration appears to be small, compared with the amount of the property; but if the parties were capable to contract and make the conveyance, they can scarcely hope to invalidate their own deeds, on the ground that they have made a disadvantageous contract. The executors have no concern with the amount paid for the shares by the purchaser. They are not to be the judges of its reasonableness or sufficiency. And if they pay according to the direction of the assignments, it is not perceived that the act can be called in question, or that they can be placed in any jeopardy.

The complainant is also bound to present his case properly before the court; in other words, he must bring in all proper parties who have interests that may be affected by the decree, so that the decree may settle the rights of all. It is objected in this case, that the legatees themselves are not parties, and of course will

not be bound by any decree that may be made. Is it necessary that they should be parties? If it is, the objection is not too late, and the cause must stand over until they can be brought in. The general rule is as has been stated—that all persons either legally or beneficially interested in the subject matter and result of a suit, must be made parties: *Coop. Eq. Pl.* 34. And in some instances, where the whole beneficial interest was in one person, and nothing but a naked legal right left remaining in the other, the court has been strict in enforcing the rule. Thus, when a bill was filed by the assignee of a judgment, to receive the rents and profits of lands bound by the judgment, the court decided that the assignor should have been made a party—he having the legal title, and the complainant having only an equitable right: *Cathcart* v. *Lewis*, 1 *Ves. jr.* 463. So in *Ray* v. *Fenwick*, 3 *Bro. C. C.* 25, the assignee of a bond filed a bill for a *ne exeat* against the obligor; and lord Thurlow refused to order the writ, and dismissed the suit, because the representative of the assignor was not made a party. It is to be observed, however, that judgments and bonds are choses in action of a strictly legal character. According to the common law, the legal right could not be divested in any way by assignment or transfer. All that could be passed was an equitable right, or what is commonly called a beneficial interest; and the holder of this interest could not cancel the judgment, nor in any way affect the strict legal right of the assignor. Hence, if a suit in equity was brought against the beneficial holder, it was necessary to bring in the holder of the legal title. His interest was considered as separate, distinct and existing, and if not brought in, the decree would be inconclusive, and no protection to the defendant.

But the rule has not been uniform. In *Brace* v. *Harrington*, (which was the case of a bond,) 2 *Atk.* 235, lord Hardwicke said it was not necessary in every case of assignment, where all the equitable interest is assigned over, to make a person who has the legal interest a party. In that case the bond sought to be recovered had lain in the hands of the assignee, twenty-two years after the assignment, without any demand having been made. It was

[King v. Ex'rs of Berry.]

calculated to excite doubt and suspicion, and for that reason the cause was ordered to stand over for the representative of the assignor to be made a party; for it is possible, says the court, that the assignor may have been paid, and it is therefore necessary to have an answer as to that particular, either from him or his representative.

It would seem from this, that the practice of the court has not been entirely uniform on this subject; and indeed, according to some modern authorities, the question of necessary parties is always more or less a matter of discretion, depending on convenience: *Ex'rs of Brasher* v. *Van Cortlandt*, 2 *John. Chan. R.* 245; *Wendell* v. *Van Rensselaer*, 1 *John. Chan. R.* 350.

The ground for making the assignor of a right or chose in action a party is, that he has, notwithstanding the transfer, a distinct and subsisting right, not capable of being assigned over, and that can only be extinguished by a decree of this court. Where the reason of the thing does not apply, the rule ceases. Hence bankrupts are not made parties to suits brought either by or against the assignees; their whole right, legal and equitable, being vested in the assignees by statute: *Coop. Eq.* 27; 3 *P. W.* 311; *De Golls* v. *Ward*, in notes. Now if, in the present case, the whole interest and right of the legatees vested in the assignee, the complainant, by the assignment, the assignors need not, and ought not, to be parties to the bill. They were legatees under a will. Their rights were not common law rights. Originally they appertained to the spiritual courts, and were dealt with according to the course of the civil law. For a long series of years legacies have been suable in the court of chancery; and that court has now, if it has not always had, a concurrent jurisdiction with the spiritual court. That they may now be sued for in the common law courts, by the statute, does not alter their essential character. They do not change their nature to suit the law of the court—but the court changes its law, and accommodates itself to their peculiar character. When suits for legacies were first prosecuted in courts of chancery, they

were obliged to adopt the law of the spiritual forums; and so it has been with the courts of common law : 3 *Ridg. P. C.* 243.

The character of the right, then, is not altered by making it cognizable, under certain circumstances, in the common law courts. It remains essentially an equitable interest. It is not barred by the statute of limitation; at least, such was the law, and such it is still in England. I am aware that chancellor Kent, in one of his last cases, held, that since a remedy at law was given here by statute to recover legacies and distributative shares, the statute of limitations would be a good bar to a suit for a legacy, even in equity: *Kane* v. *Bloodgood,* 7 *John. Chan. R.* 90. This was going further than had ever been adventured before, and overturned a number of his previous decisions. But if the principle should be adopted as expedient for the quieting of controversy, I do not think the essential and original character of a legacy would be so changed, as that, after the assignment of it by the legatee, a strict legal right would still be left in the assignor.

The claim to a legacy is essentially an equitable, and not a legal claim. That it is an assignable interest, cannot be doubted; and the assignment, if it passes any thing, must pass the whole right of the assignor.

I am of opinion, therefore, that, the assignments being legal and sufficient, it was not necessary to make the assignors parties to this suit.

As to the difficulty suggested by the defendants' counsel, that the subject matter of this suit, so far as an account is required, is now litigating in another tribunal, and that the defendants are liable to be disturbed in another court, it can present no serious obstacle to the progress of this suit. The orphan's court and the court of chancery have, to a certain extent, in reference to the accounts of executors, administrators and guardians, concurrent jurisdiction; but in all cases where a party seeks relief on grounds peculiarly of chancery jurisdiction, and which call for the exercise of chancery powers, the jurisdiction of this court is paramount. Here the complainant seeks not only for an account,

but to compel the executors to give security ; to restrain them from the further calling in or receiving certain portions of the estate ; and to have a receiver appointed, if need be. All these matters belong specially to this court. If a decree is made here, the court will take care that the party is not harassed in the other tribunal.

The complainant, then, is entitled to recover upon the case he has exhibited. The amount must be ascertained according to the usual course and practice of the court. There must be a reference to a master, to take and state an account upon proper and equitable principles. The complainant has stated fully his views on the subject, and especially as it regards the amount of interest with which he considers the defendants chargeable ; and prays that the court would now settle the principles on which certain parts of the account should be stated. But without the accounts before me, and without the benefit of the testimony that must be taken in the investigation of the claim, I feel unable to give any satisfactory directions. The leading principles of the court establishing and regulating the responsibilities and duties of executors and trustees, are generally known. Their application depends entirely upon the facts of each case. If the report of the master is not satisfactory, it can be re-examined and corrected, if need be, by the court, on exceptions taken.

When the account shall have been taken and settled, and before a final decree is made in the cause, it will be a proper time for the court to consider the claim of the defendants to protection or indemnity of some kind. They ought not to be left in jeopardy ; and the court will feel disposed to secure them in any way not inconsistent with the rights of the complainant, or its own duty and practice.

Let it be referred to a master to take an account, &c.