HIRAM H. KENNEDY and GABRIEL FIELD, executors of Shubal Luse, appellants, and WILLIAM A. PARKE, respondent.

1. An assignment of a legacy passes the whole right of the assignor; after such assignment, there remains in the assignor no distinct, subsisting right, capable of being assigned.

2. Where a legatee has assigned a legacy for a valuable consideration, it is no defense to an action brought by such assignee against the executors to recover the legacy, that they have paid it in good faith to a second assignee of the legatee, without notice of the previous assignment. No interest, legal or equitable, passes by the second assignment. But where, in point of fact, such payment was by note of one of the executors, given to the second assignee with full knowledge of the rights of the first assignee, the note was without consideration and void; and if paid at all, was paid in fraud of the rights of the first assignee, and constitutes no defense to his claim for the legacy.

3. A principal is not responsible for the fraudulent act of a special agent in a matter foreign to the transaction in which he was employed.

*Mr. Dilts*, for appellants.

*Mr. Voorhees*, for respondent.

THE ORDINARY. This proceeding was instituted by Parke, the respondent, in the Orphans Court of the county of Somerset, against the executors of Shubal Luse, for the recovery of a legacy, under the provisions of the statute. *Nix. Dig.* 588, § 65. The petition states that Shubal Luse, in and by his last will and testament, did, among other things, bequeath as follows: " I give and bequeath to my grandchildren, John, George, and Henry, children of my deceased daughter, Eliza Ann, the sum of $1000, each to receive one-third thereof, to be paid to him when he arrives at the age of twenty-three years." " If any of my said grandchildren shall die before he or they arrive at the age of twenty-three years, and without lawful issue, then it is my will that his or their share or shares of the said sum of $1000, and the in-

terest thereof, shall go to the survivor or survivors of them, share and share alike." John Vandyke, one of the said legatees, attained the age of twenty-three years on the 11th of April, 1862, and thereupon, under the provisions of the will, became entitled to the sum of $333.33.

The legatee, on the 12th of November, 1860, after he attained the age of twenty-one years, executed to Parke, the petitioner, an assignment of the legacy. The answer of the executors alleges, by way of defense, that Vandyke, the legatee, on the 29th of January, 1861, assigned the legacy, for a valuable consideration, to Richard S. Vliet. That notice was given to Hiram H. Kennedy, one of the executors, of the assignment of the legacy, and payment thereof requested. That on the 2d of February, 1861, the legacy was assigned by Vliet, for a valuable consideration, to Kennedy. That on the 5th of the same month of February, Vandyke, the legatee, released Kennedy from all demands which he then had, or could have, against him as his guardian, for any money due the legatee under the will of Luse. That Kennedy thereupon gave his note to Vliet for the amount of said legacy, payable at a future day; and that after the maturity of the note, and after the legatee had attained the age of twenty-three years, and become entitled to receive his legacy, Kennedy, under the advice of counsel, paid the said note, and thereby, as he insists, satisfied and discharged all claim that the legatee, or any one claiming through or under him, can have to the legacy.

The executors deny all notice, knowledge, intimation, or suspicion, prior to the 8th of March, 1862, of the assignment of the legacy by Vandyke to Parke, the petitioner, or to any other person, and insist, that having paid the legacy in good faith, and without notice of the claim of the petitioner, they cannot be called upon to pay the legacy a second time.

The petitioner established before the Orphans Court a clear and unquestionable title to the legacy. He showed the existence of the legacy, its transfer from the legatee by a valid assignment, a sufficiency of assets in the hands of the execu-

tors to satisfy it, and the tender of a refunding bond.   The defense is, that the legacy was subsequently assigned by the legatee to a third party, to whom it was paid in good faith by the executors, without notice of the previous assignment. The defense is based on the idea, that the legacy, like any other chose in action, is not assignable at law, that a mere equitable interest passed by the assignment, the legal title remaining in the assignor, and that the money having been paid by the executors to the second assignee, without notice of the first assignment, they cannot be prejudiced by the secret equity of the first assignee.   But the title to the legacy is not a common law right.   It was held by the Chancellor, in *King* v. *Ex'rs of Berry*, 2 *Green's Ch. R.* 54, that a claim to a legacy is essentially an equitable, not a legal claim, and that the assignment must pass the whole right of the assignor; that there does not remain in the assignor, after the assignment of a legacy, a distinct, subsisting right, capable of being assigned, but that the entire interest passes. Recognizing this principle, it is difficult to perceive how any interest whatever, legal or equitable, could have passed by the second assignment, or how the payment of the legacy to a party having neither a legal nor an equitable title to it, can constitute a good defense to the action.   It would seem that if the executors have any defense upon this ground, it is purely an equitable defense, and available only in a Court of Equity.

But, admitting the validity of the defense set up by the answer, it is not sustained by the evidence.   The money was not paid by the executors without notice of the previous equity of Parke.   The answer alleges that the executors had no notice, knowledge, or suspicion of the assignment to Parke till after the 12th of March, 1861, and that they paid the legacy in good faith.   But it is not denied that they had full notice of Parke's claim before the legacy was payable, and before it was actually paid.   True, Kennedy had given his note to Vliet for the alleged value of the legacy, payable when the legacy fell due.   But the note was not negotiable.

·It remained in the hands of the payee till after its maturity, when it was taken up and paid by Kennedy, one of the executors, with full knowledge of the existence of the claim of the first assignee.

The defense is by no means strengthened by the allegations of the answer, that Kennedy, one of the executors, had become the owner of the claim of Vliet. On the contrary, this part of the answer is manifestly based upon erroneous pretences, and casts a shade of suspicion over the entire defense. Kennedy alleges, that as the legacy to Vandyke was payable only upon the contingency of the legatee's attaining the age of twenty-three years, he hesitated about paying the money to Vliet, and for the purpose of assuring Kennedy, an assignment and transfer of Vliet's interest was made to him, and that he still hesitated to pay the amount of the legacy. For the purpose of giving Kennedy greater assurance, Vliet procured and tendered to him a deed of release from Vandyke for the legacy. Now, it is obvious, that if the legacy to Vandyke had failed, by his death before attaining the age of twenty-three years, neither his release of his legacy, nor the assignment of Vliet's claim to Kennedy, could have given any assurance of his safety in paying the legacy. Nor were they given to obtain an immediate payment of the money, for, in point of fact, the money was not paid till after the legacy fell due. Kennedy gave his note for the money, dated on the 2d of February, three days before the date of the release from Vandyke, but not negotiable, and payable, as has been said, after the legacy became due. It was, in fact, not paid until after its maturity, and after the legatee had attained the age of twenty-three years. It was paid voluntarily, with full knowledge of the rights of the first assignee. The giving of the note was no payment of the money. Under the circumstances, the note was obviously without consideration, and void in the hands of the payee. Neither Vliet nor Kennedy were in a position to enforce the payment of the legacy against the executors. The money, if paid at all by the executors, was paid in fraud of the rights

of the petitioner, and constitutes no defense against his claim for the legacy.

There is nothing in the objection that Parke being present by his attorney, at the time of the assignment to Vliet, is answerable for a constructive fraud in concealing his prior right, and is, therefore, estopped from enforcing his claim to the prejudice of the second assignee. A principal is doubtless answerable for the concealments as well as the fraudulent representations of his principal in the conduct of a transaction in which he is employed to act for his principal. But Voorhees was, in no sense, the attorney or agent of Parke in the transaction alleged to be fraudulent. He was employed by Parke to collect the legacy. Instead of doing so, he basely betrayed his client's interest by procuring from the legatee an assignment to a third party. There is strong reason to believe that he was acting in that transaction, as the attorney of Vliet. Vliet, himself, swears that he employed Voorhees as his attorney in the matter, a week or two before the 2d of February, 1861. The assignment of the legacy to him bears date only four days before. But whether he was acting as the attorney of Vliet or of Vandyke, or solely at the instigation of his own selfish instinct and love of gain, is immaterial. It is clear that he was not the attorney of Parke, and he cannot be held constructively liable for the fraud.

The decree of the Orphans Court must be affirmed, with costs.