THE BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 85, OF
LONG BRANCH,

*v.*

L. F. DUPARQUET et al.

1. An assignment, in language operating *in præsenti*, of money due and to grow due from a third person, effects an immediate and present transfer to the assignee of a right to demand and receive the money assigned without notice to the debtor, and after such assignment the debtor no longer owes the assignor, but does owe and will owe to the assignee what he would otherwise owe to the assignor.

2. An attachment against the assignor, issued and served upon the debtor after such assignment and before notice thereof to the debtor, will not defeat the assignee's right to the money.

3. An assignment by one who has contracted to erect a building of the money due and to grow due to him thereon, will prevail over a notice served upon the owner by a laborer or materialman after the assignment but before notice thereof to the owner.

4. The office and value of notice of the assignment, given by the assignee of a debt or money held on deposit or in trust, to the debtor, depositary or trustee, is to prevent the debtor, depositary or trustee and innocent third parties from dealing with the original assignor as still the creditor, owner or beneficiary.

On final hearing.

*Mr. John E. Lanning,* for Louis F. Duparquet & Knot.

*Mr. John Griffin,* for the Griffing Iron Company.

*Mr. William D. Campbell* and *Mr. Hastings* (of New York), for the Ames Iron Works, Mulligan & Brazo and Milan & Lewis.

*Messrs. Throckmorton & McDermott,* for William J. Forbes.

PITNEY, V. C.

This is a bill of interpleader. The defendants answered separately, claiming that the complainants should be charged with

interest upon the amount—$2,088—which by their bill they admitted to be in their hands, and, by a stipulation, that question was first heard and determined, and the amount ascertained by the court to be due from the complainant was paid into court and the complainants discharged.

The contest is between the defendant William J. Forbes, of the one part, and divers creditors of the Wilson Boiler Company of the other part.

The boiler company erected upon the premises of the complainants a boiler and appliances for a contract price, of which the sum just mentioned was the balance due from the complainants, and the defendant Forbes claims that balance by an assignment from the Wilson Boiler Company to him, dated, executed and delivered in February, 1887. The other defendants claim under an attachment issued out of the circuit court of the county of Monmouth on the 14th day of March, 1887, which proceeded to judgment, and the auditor appointed in the proceedings demanded the amount of the complainants. Forbes also demanded the amount due from the complainants, claiming under his assignment. The bill sets out that the auditor and creditors in attachment allege that the assignment to Forbes is defective because it was not executed by the proper officer of the boiler company, but by some person without authority to execute the same, and that it was not the corporate act of the boiler company, but was executed without its knowledge or consent and without consideration, and that it is not sufficient to transfer the claim of the boiler company to Forbes, and was made for the purpose of defeating the creditors in the attachment suit and preventing them from collecting their claims.

The several answers of the several creditors to this allegation of the bill is substantially as follows : The defendants say that they have no direct knowledge of the making of the assignment to said Forbes, and, therefore, neither admit nor deny the same, and leave the said Forbes to make such proof thereof and of the validity of the same as the court may direct in the premises.

The answer of Forbes, in answer to the allegations of the bill above set forth, sets out that the assignment was duly made under

the seal of the company by an officer of the company authorized to use it, and that it was founded upon the consideration of the sum of $1,500 paid by the defendant Forbes to the said company at and before the execution of said assignment, and the further sum of $493.50 paid to and for said company subsequent to the delivery of said assignment, to which said assignment reference is made, with offer of production.

Subsequently the Griffing Iron Company filed an amended answer, in which it set up that on the 23d of March, 1887, and pending the attachment proceedings, it had served a notice upon the complainants under the third section of the Mechanics' Lien law, and such service was proved at the hearing.

No further issue was ever made up between the parties, and the cause came to hearing, when the defendant Forbes proved to my satisfaction the execution of an assignment by the Wilson Boiler Company to him, dated on the ——— day of February, 1887, but proved to have been actually executed and delivered before the 25th of that month, in consideration of $1,500, by which the Wilson Boiler Company assigned to Forbes

'all sums of money now due or hereafter to become due to the said Wilson Boiler Company from the Electric Sugar Refining Company and from the School Board of Education of Long Branch, New Jersey, for work done and to be done by the said Wilson Boiler Company, under their contracts with the above-named parties."

He further proved that the sum of $1,500 was paid to the boiler company on or about the 23d of February, 1887, and that it was advanced by a syndicate of four or five individuals, of whom he (Forbes) was one, and one York, since deceased, was another, and that he subsequently advanced, on the strength of this assignment, other moneys to the company in order to enable it to finish its contract with the complainants, which at that time was incomplete. The exact amount that was so advanced in addition to the $1,500 was not clearly proven. It further appeared that $550 had been collected from the Electric Sugar Refining Company, and that the balance was still due. It further appeared that on the 19th of March, 1887, Mr. Forbes wrote two letters in duplicate, one addressed to the Long

Branch Board of Education and the other to Dr. T. G. Chattle,. then secretary of the board of education, and mailed them in pre-paid envelopes to Long Branch, New Jersey, of which this is a copy :

"DEAR SIR—The present serves to advise you that I have an assignment from The Wilson Boiler Company of their claim against your Board for all sums of moneys now due or hereafter to become due to the said Wilson Boiler Company for work done or to be done on their contract with your Board. Kindly take notice, therefore, that all payments for such work should be made to me, and that I hold you liable for such sums. Very truly yours."

These letters were enclosed in envelopes, endorsed with a request to return to the writer, and neither of them was returned. I am satisfied from this and other circumstances that the letters reached their destination.

I held at the hearing that though the assignment was absolute on its face, yet under the circumstances it was a mere mortgage, and that Mr. Forbes, if entitled to anything, was entitled to only so much of the fund as would repay him the amount due, with interest.

The principal objection made at the argument to this assignment was, that no sufficient notice of it had been given to the complainants ; and it was argued that, without notice being served prior to the issuing of the attachment, or to the service of the notice under the third section of the Mechanics' Lien law, it was inefficient to pass the title to the fund as against the attachment or the notices under the third section ; and for this position reliance was placed on the opinion of Chancellor Green, in *The Superintendent of Schools* v. *Heath, 2 McCart. 22,* and of Vice-Chancellor Van Fleet, in *Shannon* v. *Hoboken, 10 Stew. Eq. 123,* and of Vice-Chancellor Green, in *Bank* v. *Bayonne, 3 Dick. Ch. Rep. 246.*

With regard to the claim to the notice served under the third section of the Mechanics' Lien law, I think that the letter of March 19th is quite sufficient to protect Mr. Forbes. But, further, I think notice of this assignment was unnecessary in order to vest the title to this fund in the assignee. The document worked a complete transfer by the direct force of the language

used, and does not depend upon any implication or mercantile usage. In this respect it is distinguishable from a mere order for the payment of the fund, or some portion of it, directed to the depositary or debtor. It transfers the property in the fund *in præsenti*, and is irrevocable. It requires no assent on the part of the depositary or debtor in order to give the assignee a right of action in a court of equity in his own name. The function of an assent or acceptance by the depositary or debtor is to give the assignee a right of action at law in his own name founded upon a new promise, but no such assent or acceptance is required in this court. The only defence which the depositary or debtor can have against the assignee is that, before receiving notice of the assignment, he paid the amount in his hands over to the assignor or upon his order. It is just here that the function of notice comes in. It prevents the depositary or debtor from paying the fund to a person who is no longer entitled to it. Such was its function in *Bank* v. *Bayonne, supra*. There the contractor (Phelan) made two assignments of the contract price for building a sewer, due and to grow due to him from the city, one to the complainant, dated September 6th, and another to Frank James, dated September 9th. Complainant notified the city of his assignment on October 1st. No proof was made of any notice served by James. The city, after notice of complainant's assignment, paid James on an order signed by James as attorney for Phelan, and the question involved in the case was whether such payment was a defence to the action, and it was held that it was not, and the language of the learned vice-chancellor must be construed accordingly. The complainant's assignment was first in order of time, and the depositary, the city, paid it to another person after receiving notice of it.

I do not understand the learned vice-chancellor to have decided that notice to the depositary was an essential part of the assignment, any more than the registry of a deed of conveyance absolute, or by way of mortgage, of lands, is an essential part of those instruments; but as their registry is, in the absence of notice by possession or other means, necessary in order to prevent the title from passing to a *bona fide* purchaser without notice, so

Board of Education *v.* Duparquet.

in the case of the assignment of a fund in the hands of a depositary, notice to the depositary is necessary in order to prevent him from paying the money to the depositor or upon his order in good faith and in ignorance of the assignment. I can find no authority for giving the notice any greater value than that just indicated. The text of *2 Spence Eq. Jur. 856 et seq.* seems to me to go no farther when interpreted in the light of the decisions upon which it is based.

Under the English Bankrupt and Insolvent laws (*21 James I. ch. 19 § 11*, re-enacted in *6 Geo. IV. ch. 6 § 72*) all personal property and choses in action in *the possession, order or disposition of the bankrupt or insolvent by permission of the true owner* passed to his assignee ; and, hence, it was held that assignees of choses in action must do all in their power, which the nature of the cases admitted of, to reduce the thing assigned into possession, in order to prevent it passing to the assignee in bankruptcy or insolvency, and it was held that notice to the debtor was one thing that they might do, and that it was sufficient to prevent the title vesting in the assignee in bankruptcy or insolvency. "And," says the learned author, " the same principle holds as between a prior and subsequent purchaser or incumbrancer." This necessity to give notice arising out of the English Bankrupt law led to a practice in England of giving immediate notice to the depositary or debtor of assignments of choses in action, and parties before taking them were in the habit of inquiring of the debtor or assignee whether any notice had been served upon him, and if no notice had been served they felt safe in making the purchase. The effect of this practice was that the courts held that the party who bought without notice of a previous assignment, and after inquiring of the debtor or depositary, got a better title than a prior assignee who had not taken the precaution to give notice. This giving notice to the debtor or depositary came to take the place of a public registry of the assignment. This is illustrated by the cases of *Dearle* v. *Hall* and *Loveridge* v. *Cooper, 3 Russ. 1.* The head-note of these cases is this : "A person having a beneficial interest in a sum of money, invested in the names of trustees, assigns it for valuable consideration to

Board of Education *v.* Duparquet.

A, but no notice of the assignment is given to the trustees; afterwards, the same person proposes to sell his interest to B, and B having made inquiry of the trustees as to the nature of the vendor's title, and the amount of his interest, and receiving no intimation of the existence of any prior incumbrance, completes the purchase, and gives the trustees notice; B has a better equity than A, to the possession of the fund, and the assignment to B, though posterior in date, is to be preferred to the assignment to A." And Sir Thomas Plumer, master of the rolls, in delivering judgment, said this (at *p. 12*): "Where a contract, respecting property in the hands of other persons, who have a legal right to the possession, is made behind the back of those in whom the legal interest is thus vested, it is necessary, if the security is intended to attach on the thing itself, to lay hold of that thing in the manner in which its nature permits it to be laid hold of; that is, by giving notice of the contract to those in whom the legal interest is. By such notice, the legal holders are converted into trustees for the new purchaser, and are charged with responsibility towards him; and *the cestui que trust is deprived of the power of carrying the same security repeatedly into the market, and of inducing third persons to advance money upon it, under the erroneous belief that it continues to belong to him absolutely free from encumbrance,* and that the trustees are still trustees for him, and for no one else. That precaution is always by diligent purchasers and encumbrancers. If it is not taken, there is neglect; and it is fit that it should be understood that the solicitor who conducts the business for the party advancing the money is responsible for that neglect. The consequence of such neglect is, that the *trustee of the fund remains ignorant of any alteration having taken place in the equitable rights affecting it;* he considers himself to be a trustee for the same individual as before, and no other person is known to him as his *cestui que trust.* The original *cestui que trust,* though he has in fact parted with his interest, appears to the world to be the complete equitable owner, and remains in the order, management and disposition of the property as absolutely as ever; so that he has it in his power to obtain, by means of it, a false and delusive credit. *He may*

*come into the market to dispose of that which he has previously sold; and how can those who may chance to deal with him protect themselves from his fraud?* Whatever diligence may be used by a *puisne* encumbrancer or purchaser—whatever inquiries he may make in order to investigate the title, and to ascertain the exact state of the original right of the vendor, and his continuing right—the trustees, who are the persons to whom application for information would naturally be made, will truly and unhesitatingly represent to all who put questions to them that the fund remains the sole, absolute property of the proposed vendor. These inconveniences and mischiefs are the natural consequences of omitting to give notice to trustees, and they must be considered as foreseen by those who in transactions of that kind omit to give notice; for they are the consequences which, in the experience of mankind, usually follow such omission." And Lord Lyndhurst, on appeal, in affirming the decree of the master of the rolls, says (at *p. 58*): "Where personal property is assigned, delivery is necessary to complete the transaction, *not as between the vendor and the vendee, but as to third persons, in order that they may not be deceived by apparent possession and ownership remaining in a person, who, in fact, is not the owner.* This doctrine is not confined to chattels in possession, but extends to choses in action, bonds &c. In *Ryall* v. *Rowles* it is expressly applied to bonds, simple contract debts and other choses in action. It is true that *Ryall* v. *Rowles* was a case in bankruptcy; but the Lord Chancellor called to his assistance Lord Chief Justice Lee, Lord Chief Baron Parker, and Mr. Justice Barnett; so that the principle on which the court there acted must be considered as having received most authoritative sanction. These eminent individuals, and particularly the Lord Chief Baron and Mr. Justice Barnett, did not, in the view which they took of the question before them, confine themselves to the case of bankruptcy, but stated grounds of judgment which are of general application. Lord Chief Baron Parker says that, on the assignment of a bond debt, the bond should be delivered and notice given to the debtor; and he adds that, with respect to simple contract debts, for which no securities are holden, such as book

16

debts, for instance, notice of the assignment should be given to the debtor, *in order to take away from the debtor the right of making payment to the assignor, and to take away from the assignor the power and disposition over the thing assigned.*"

And in accord with this doctrine is the language of Mr. Spence on *p. 858;* and see *Jones* v. *Gibbons, 9 Ves. 407* (at *p. 410*), where Sir William Grant, master of the rolls, in discussing this question and the necessity of an assignee of a chose in action doing everything practical to reduce it into possession in order to avoid the effect of the bankrupt act, says: "It might, perhaps, have been a question whether after assignment and delivery of the security to the assignee, the bankrupt could be said to have the order and disposition, merely because there was no notice to the debtor of the assignment. Probably that requisite was added, *as otherwise the debtor might safely pay the money to the person who had without his knowledge ceased to be his creditor.* The debtor would be *bona fide* in making the payment; and it would be impossible to make him pay again. Sir Thomas Parker lays it down, certainly, that there must be that notice."

The result is that the whole value of notice to the debtor or depositary of the assignment of the fund or chose in action is— *first,* under the English Bankrupt law, to prevent the subject of the assignment being considered as in the possession or under the order or disposition of the assignor with the permission of the assignee; and, *second,* to prevent the debtor, depositary or trustee and innocent third parties from dealing with the original assignor as still the creditor, owner or beneficiary.

Our attachment act is in the nature of an involuntary insolvent or bankrupt law, and in that respect resembles the English Bankrupt law, but it has never been held that the attaching creditor or his representative, the auditor in attachment, occupies the position of a *bona fide* purchaser without notice, or can have any better title than the debtor himself had. Thus title under an attachment is taken subject to an unrecorded mortgage. *Campion* v. *Kille, 1 McCart. 229; 2 McCart. 500; Lanahan* v. *Lawton, 5 Dick. Ch. Rep. 276.*

I do not understand that the precise question here raised was involved in *The Superintendent of Public Schools* v. *Heath, 2 McCart. 22*. The case does not show whether any of the orders drawn by the builder in that case, and which were held to operate as partial assignments of the fund, were so drawn prior to the date of the service of the notices under the third section of the lien law or not. It does not show that any such order was drawn prior to a notice served under that section and presented to the auditor after such service. In the absence of such feature the question of the value of the presentation of the order to the depositary could not arise.

Two questions occupied the attention of the court—*first*, Did an unaccepted order operate as an assignment in equity, and would it be enforced for a portion only of the fund? This was decided in the affirmative. *Second.* Was an order drawn in favor of a materialman or laborer, who was entitled to serve a notice under the third section of the act, entitled to preference over an order drawn in favor of a person who had not such right under the third section? This question was decided in the negative. The order of priority among those who had served notices under the third section was fixed according to the date of the service of their several notices (*p. 25*), and necessarily so, since the statute makes the service the very essence of the right. It is a proceeding quite *in invitum* the contractor, and has no analogy to an assignment by means of an order. But, as before remarked, the question of the value of the mere presentation to the drawee of an order actually drawn and delivered against either a notice served under the third section, or another order, does not appear to have been either raised or considered. The chancellor at the end of his opinion merely says: "Each creditor is entitled to be paid in the order in which his notice or order was presented to the complainants." I cannot believe that he had in mind the question here involved. The same may be said of what was said in *Shannon* v. *Hoboken*.

Forbes' assignment is therefore good as against the attaching creditors, and it is also good as against the notice served under the third clause of the Mechanics' Lien law, not so much by reason

of the previous notice given to the board of education as because at the time of the service of the notice so much as was assigned by this mortgage was not due from the board of education to the boiler company. *Craig* v. *Smith*, 8 *Vr. 549; Shannon* v. *Hoboken*, 10 *Stew. Eq. 123, 127, 318; Lanigan's Admr.* v. *Bradley and Currier Co.*, 5 *Dick. Ch. Rep. 201.*

Unless counsel can agree upon the amount due upon the assignment there must be an order of reference to a master to take an account of it. In taking such account the master will allow Forbes for all advances actually made before the date of the attachment and all those made afterwards which were applied in good faith to the completion of the contract of the boiler company.