1. The primary inquiry herein is: As between successive assignees of the same chose in action (in this case a legacy), does prior notice to the debtor (in this case a testamentary trustee) of the later assignment, without more, subordinate the rights of the earlier to those of the later assignee?
It is difficult to suggest any concrete question which has received more consideration from the courts of England and of this country than this; and perhaps equally difficult to find any question on which the courts of this country are more evenly divided. In this state, until the decision of the late Vice-Chancellor Emery in Jenkinson v. New York Finance Co.,79 N.J. Eq. 247, the following prior decisions had been generally regarded as determining that question in the negative. King v.Berry, 3 N.J. Eq. 44, 54; Executors of Luse v. Parke, 17 N.J. Eq. 415; Kamena v. Huelbig, 23 N.J. Eq. 78; Terney v. Wilson,45 N.J. Law 282; Board of Education, c., of Long Branch v.Duparquet, 50 N.J. Eq. 234; Miller v. Town of Stockton,64 N.J. Law 614; Cogan v. Conover Manufacturing Co., 69 N.J. Eq. 809; United States Fidelity and Guaranty Co. v. City of Newark,76 N.J. Eq. 230, 234. But in the Jenkinson Case the learned vice-chancellor distinguished these several cases and adopted what is commonly referred to as the English rule to the general *Page 411 
effect that a failure of the prior assignee to give notice to the trustee prior to such notice by the subsequent assignee is operative to raise a superior equity in the latter. It should be noted, however, that in the Jenkinson Case inquiry had been made of the executor by the subsequent assignee, prior to taking his assignment; but the English rule was adopted irrespective of that circumstance. In the present case no such inquiry was made. In the recent case of Salem Trust Co. v. Manufacturers'Finance Co., 264 U.S. 182, Mr. Justice Butler has given a characteristically able and comprehensive examination of this specific inquiry. The logic of his conclusions is too powerful to be resisted. After reviewing the English authorities and pointing out the dissatisfaction of some of the English courts with the notion that the failure of the first assignee to give notice to the trustee is in any way operative to injure a subsequent assignee who has not made inquiry, his general conclusions may be said to be sufficiently portrayed in the following quotation from pages 197, 198 of the reported opinion:
"There is no decision of this court which sustains the contention that, as between successive assignees of the same chose in action, mere priority of notice gives priority of right. It seems to us that the better reasons are against such a rule. By the first assignment, the rights of the assignor pass to the assignee. The creditor has a right to dispose of his own property as he chooses, and to require the debt to be paid as he directs, without the assent of the debtor. See Story Eq. Jur. (11thed.) § 1057. Notice of the assignment to the debtor adds nothing to the right or title transferred. A subsequent assignee takes nothing by his assignment because the assignor has nothing to give. See Judson v. Corcoran, supra 614. If, after assignment, the assignor receives payment from the debtor, he is liable to the assignee. Failure of the first assignee to give notice does not divest him of any title or right, or vest any claim in a subsequent purchaser. It cannot injuriously affect an intending purchaser who makes no inquiry of the debtor concerning the assignor's title. The debtor is not bound to answer inquiries concerning the assignor's title, and there can be no assurance that an intending *Page 412 
purchaser can ascertain the encumbrance by inquiry of the debtor having notice of the earlier assignment. Low v. Bouverie
(1891), 3 Ch. 82, 99; 60 L.J. Ch. (N.S.) 594; 65 L.T.
(N.S.) 533; 40 Week. Rep. 50. Compare Ward v. Duncombe,supra 393. It is impossible to eliminate all risk from such a transaction, if the second assignee elects to rely on the representations of the vendor as to his title, and is deceived, he cannot shift his loss to the first assignee, unless some act or omission of the latter was proximate to the deception.
"Facts and circumstances may create an equitable estoppel against the first assignee. Herman v. Connecticut Mutual LifeInsurance Co., 218 Mass. 181; 105 N.E. Rep. 450; Ann. Cas. 1916A,822; Rabinowitz v. People's National Bank, 235 Mass. 102;126 N.E. Rep. 289. It would be unconscionable to permit him to prevail over a later assignee whom he had misled or deceived in respect of the assignor's title at the time of purchase by the latter. But, assuming a duty on the first purchaser to protect a subsequent assignee against deception and fraud by the assignor, there is no ground for subordinating his claim, unless his failure was an element in, or contributed to, the deception. In the absence of inquiry by the subsequent purchaser, the failure of the first to give notice is immaterial."
I am impelled to adopt these views. This same specific inquiry came before the American Law Institute in 1928 and the rule there adopted protects the first assignee as against the assignment of the second assignee who has given prior notice. Restatement ofLaw Contracts (Official Draft) 217, § 173. Illustration 3 (at p. 209.)
2. It herein has been assumed that both assignees enjoyed the status of purchasers for value without notice. That is true as to complainant, the first assignee in point of time. The assignment was made to it by the assignor as collateral security for a loan of money made to the assignor at the same time. If the assignment to defendant trust company was not such as to give it the status of an innocent purchaser for value the equitable rights of complainant are clearly superior for that reason alone. GeorgeF. Perry Son, Inc., v. Mand, *Page 413 107 N.J. Eq. 102; see, also, 5 C.J. 956, § 140. The assignment by the assignor to defendant Industrial Trust Company, was as collateral security for the payment of a pre-existing indebtedness due from the assignor to that company. The claim now is made in behalf of the Industrial Trust Company that in consideration of the assignment additional time was given the assignor in which to pay the prior indebtedness, and that this extension of time for payment was valuable consideration which gave to the company the status of a purchaser for value. The evidence touching the extension of time is to be found in the testimony of the treasurer. It is far from satisfactory. It may be said to be a reasonable inference that when additional collateral is deposited by a debtor with his creditor the deposit is made in the hope of further indulgence. The testimony goes scarcely further than to suggest that situation. More collateral was demanded and it was given. No agreement was made touching an extension of time, although it cannot be doubted that the deposit was made by the debtor to get more time. I am unable to discern in the testimony anything equivalent to contractual obligation on the part of the trust company to extend time. But in any event it must be recognized that the defense of a bona fide purchaser for value must not only be pleaded, but it must be clearly and unequivocally stated in the answer that the purchase was for value and without notice, and the answer must also set forth all the particulars of the purchase. Graves v. Coutant, 31 N.J. Eq. 763
(at p. 779). Neither has been done. This might be cured by amendment and an opportunity thereby afforded to complainant to meet that claim by further testimony; but in the broader view of the case herein taken I think that unnecessary.
3. The two judgments entered by the Seth Thomas Clock Company and the judgment entered by the National Security Company, all entered prior to the assignments, are superior prior liens on the real estate; but no executions having been issued, are subject to the superior rights of the two trust companies under their assignment as to the personalty. The other judgments are all subsequent to the assignments and subject to the rights vested in the assignees. *Page 414