This is a bill by complainant to compel defendant insurance company to issue a policy of industrial insurance to her deceased brother. She seeks the performance of the alleged agreement and the payment to her of an amount which she claims is due by reason of the death of her brother. The facts are these:
A certain Mr. Weiss is a collecting and soliciting agent of the defendant company. His work is that of collecting premiums and soliciting applications for industrial insurance. Prior to June 3d 1929, he had been collecting premiums from the complainant. Complainant testified that she knew him to be the collector of premiums for the defendant company. Mr. Weiss, on June 3d 1929, met William Taylor, complainant's brother, and Mr. Taylor then decided to submit an application to the defendant company for industrial insurance. Mr. Weiss produced an application and asked Mr. Taylor certain questions. These questions were answered by Taylor and the answers written in by Weiss. Taylor signed the application on the front and on the back. Complainant testified *Page 16 
that both she and her brother understood that all that was being done at the time was to submit an application — nothing more. Thereafter, Weiss turned in the application to the district office in Roseville to be submitted to the home office in New York for approval.
The application submitted by Taylor is the usual form of application and is designated at the top as "Application to the Metropolitan Life Insurance Company, Industrial Department." Over Taylor's signature, on the face of the application, is the following language: "I hereby apply for the above-described policy, and all the statements in Parts A and C of this application are made by me to induce the Metropolitan Life Insurance Company to issue said policy of insurance." On the reverse side of the application, and again over the signature of Taylor, appear the following statements:
"To the Metropolitan Life Insurance Company to induce the Metropolitan Life Insurance Company to issue policy and as consideration therefor I agree, on behalf of myself and of any other person who shall have or claim interest in any policy issued under this application, as follows:"
(Here follow certain statements as to the physical condition of Mr. Taylor.)
"I hereby declare that the statements recorded above and on the reverse side hereof are true and complete and I agree that any misrepresentation willfully made shall render the policy void and that the policy shall not be binding upon the company unless upon its date I shall be alive and in sound health."
Annexed to this application by a perforation was a receipt. This receipt was filled in by Weiss, and reads as follows:
"Date June 3, 1929. Received from Wm. Taylor, two 14/100 dollars, being a deposit of weekly premiums or monthly premiums on account of Application for Insurance in the Metropolitan Life Insurance Co. made this date. If the application is accepted and a policy issued, this sum will be applied toward payment of the premiums thereof. If application is rejected, the amount will be returned to the applicant. No obligation is incurred by said company, by reason of this deposit, unless and until a policy is issued *Page 17 
upon said application and unless at the date and delivery of said policy the life proposed is alive and in sound health, except that if the life proposed is now in sound health and the amount paid by applicant at the time the application is written is not less than four weekly premiums (or one monthly premium, if a monthly premium policy) and this receipt, detached from the original application, covering such payment, is surrendered to the company, the company agrees, if the application is approved at the home office in New York, that, should death occur prior to the delivery of the policy and within eight weeks from the date of the original application, it will, nevertheless, pay such amount as would have been due under the policy, if issued. No obligation is assumed by the company unless the application is so approved and the life proposed is now in sound health.
District — Roseville Debit No. 469, Morris Weiss, Agent.
Return this receipt if you get a policy and see that the agent gives you proper credit."
On the reverse side of the receipt appeared the following:
"Be careful of this receipt; it is valuable.
If the holder of this receipt does not receive a policy of insurance or the return of the money herein receipted for, within three weeks, write, stating name of agent and particulars, to
 METROPOLITAN LIFE INSURANCE COMPANY, Industrial Policy Division, 1 Madison Avenue, New York City."
The application submitted by Taylor was for a policy in the amount of $500 in the event of natural death, and $1,000 in the event of accidental death. There is no proof of the cause of death. It is admitted that the man died, but whether naturally or accidentally, does not appear. Moreover, nowhere in the application does the name of the complainant appear as beneficiary. She, herself, says that no form of slip was signed by her brother or prepared by Weiss, designating her as beneficiary.
Taylor's application was submitted to the Roseville district office, and by it submitted to the home office in New York. The application passed through the regular routine of the home office until it reached a Miss Vogt, the assistant approver of applications, on or about June 10th or 11th, 1929. Her duties consist of passing upon applications, according to certain rules and regulations of the company. Taylor's application was brought to Miss Vogt's attention for further *Page 18 
inspection. The answer to a material question had been omitted, viz., the place of the applicant's employment. Up to that time the application had not been approved. This was two or three days after Taylor's death. When Miss Vogt received the application, she had no knowledge of Taylor's death. Miss Vogt ordered an inspection report made, and at the same time sent a notification to the Roseville district that the application was held up pending investigation.
Mr. Peterson, the chief approver, testified that Taylor's application had never been approved, and could not under any circumstances have been approved by the company because of the facts developed by the inspection report. It seems that Taylor was a bad risk. Peterson further testified that Weiss had no authority to accept or approve applications.
Tenders of the initial premium paid under the receipt were repeatedly made and refused.
In the first place, the complainant is not the proper party complainant to such an action. She is nowhere designated as beneficiary. The action, if it lie at all, should be by the administrator or executor of the estate of Taylor.
Moreover, there was no contract of insurance. What Taylor signed was merely an application. In 32 Corp. Jur. 1102
§ 188, an application is construed in the following language:
"An application for insurance is simply a request, proposition, or proposal for, or offer to accept, a contract or policy of insurance, and does not become a contract of insurance unless, and until, it is accepted by the company; the company is at liberty to accept or reject it, and, before acceptance, the applicant has the right to withdraw it."
In 32 Corp. Jur. 1105 § 193, it is further stated:
"To create a binding contract of insurance, an acceptance by the company of an offer or application for insurance must be an unconditional acceptance of the offer or application as made; it must be made by an officer, agent or board authorized to accept for the company; * * * acceptance or approval at the home office of the company is essential when so stipulated in the application."
It is important to observe that the receipt signed by Taylor required approval in the home office, not rejection. *Page 19 
Liability would attach only on approval. Many cases sustain this contention. I need only quote one — Mutual Life InsuranceCo. of New York v. Young's Admr., 90 U.S. 85. The binding receipt in this case read in the usual way and was not effective until the application was accepted by the company. The application was for $5,000, ten-payment life, with quarterly premiums of $99.30, and the policy was to take effect from June 5th. The policy was issued but the company decided to date it, for certain reasons, April 5th, instead of June 5th, as applied for. So the quarterly premium payments were to be made on entirely different days than those specified in the application. As the result of the change of the date of the policy, there was a change in the amount of the premium. The policy was forwarded to the agent but before it was delivered to the insured, he died. The United States supreme court says:
"The receipt of the 5th of June was the initial step of the parties. It reserved the absolute right to the company to accept or reject the proposition which it contained. There was a necessary implication that, if it were accepted, the response and acceptance were to be by a policy, in conformity with the terms specified in the receipt as far as they extended, and beyond that, in the usual form of such instruments as issued by the company. But it was clearly within the power of the company, under the condition expressed, wholly to reject the application, without giving any reason; or to accept the proposition with such modifications of the terms specified, and of the usual conditions of such policies as it might see fit to prescribe. The entire subject was both affirmatively and negatively within its choice and discretion. The acceptance was a qualified one, and there was none other."
Note the sentence, "the acceptance was a qualified one and there was none other." The court goes on to say:
"It was by a policy departing from the terms specified in the receipt in the particulars before mentioned, but containing as to the conditions imposed otherwise, nothing beyond what was usual in such cases. At this stage of the business, the company was not bound according to the receipt, *Page 20 
because it had not agreed to a part of the terms specified, and those terms were material and of the essence of the proposition. Clearly the company never did agree to those terms. * * *
"This court has no power to make such an agreement for it. The indispensable element of the consent of one of the parties is shown not to have existed. The contrary appears by the policy transmitted to the agent. * * *
"The mutual assent, the meeting of the minds of both parties, is wanting. Such assent is vital to the existence of a contract."
It seems unnecessary to quote other authorities, though there are many, and it is also unnecessary to discuss the other objections of counsel for defendant. I am satisfied that complainant has no standing in this court, and I will advise a decree dismissing her bill. *Page 21