ANNIE AXELROAD, as Executrix, etc., of CHARLES AXELROAD, Deceased, Appellant, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Respondent.

Second Department, November 16, 1934.

*Stephen Callaghan* [*Ralph Stout, Virginius Victor Zipris* and *Saul Levine* with him on the brief], for the appellant.

*Dean Potter,* for the respondent.

KAPPER, J. The plaintiff appeals from a judgment awarding her the sum of $492.68, in an action upon a life insurance policy

which the defendant issued on the life of her testator, Charles Axelroad, in the sum of $20,000, payable to his estate. Axelroad died April 30, 1933, at which time the premium obligations had been fulfilled, but the contention of the respondent insurance company is that the decedent had been guilty of fraud and misrepresentation in his application to reinstate the policy, which had lapsed for non-payment of premium. There is no question that representations in the application that the insured's state of health was sound and that he had consulted no physicians were untrue. The issue of fact on the trial, and of law on this appeal, is whether the responsibility for the making of these untrue representations was upon the insured or the insurer. Briefly, a sharp question of fact was presented — on the one hand, between defendant's employee, Albert M. Smith, who was the assistant manager of a branch office, and, on the other hand, the appellant and her witnesses — whether the *insured* made the untrue representations or whether Smith himself made them. It is conceded that the signature to this application for reinstatement is that of the insured and that the answers to the various questions contained in the body of the application are in the handwriting of Smith. Smith testified that he inserted these answers in response to the insured's dictation as he, Smith, put each question to him. The testimony of the appellant and her witnesses would lead to the conclusion that Smith had handed the insured the application form entirely in blank, for his signature only, requiring nothing more of him and taking the blank form away after it had been signed by the insured and thereafter filling in the answers at his convenience in a manner to suit himself and regardless of their truth.

Specific questions of fact were submitted to the jury, who answered them in favor of the plaintiff, namely, that the insured did not state to Smith that he had not suffered from any illness since January, 1924 (the date of the issuance of the policy); that he did not state to Smith that he had not consulted any physician since January, 1924; that when he signed the application for reinstatement of his insurance the words " No " and " No " had not been written in the space opposite the questions under the numeral 6; that he signed the application for reinstatement in blank at the request of Smith; and that he so signed in reliance upon a representation by Smith that he, Smith, would complete the document in a proper manner.

Three of the questions and answers contained in this application are as follows: " 4. Are you now in sound health? A. Yes. * * * 6. Have you since date of issue of the above policy (a) Had any illness or injury? If yes, give date and particulars. No.

(b) Consulted any physician or physicians? If yes, give date, and name and address of physician or physicians, and state for what illness or ailment. No."

Thus, on the question of responsibility for the answers to the application form questions, the jury consistently decided in favor of the appellant. If the facts thus established warranted a judgment in favor of appellant, it is conceded that the amount recoverable by her would be $15,253.50.

The learned trial justice set the jury's findings aside and directed a verdict for the plaintiff in the sum of $475.30 and interest, representing the value of a paid-up policy on the slight amount of premium paid prior to the reinstatement and the refund of premiums paid since that time.

The deceased died of " Coronary occlusions," and the defendant's medical examiner stated that this is a very serious ailment wherein the walls of the two coronary arteries become thickened and tend to close, in which event instant death results; and that it is a very slow, progressive affliction requiring several years to culminate.

The jury were charged, without exception, that the statements in the application for reinstatement were untrue and " if they were made with the knowledge or consent of Axelroad, he must accept the consequences of having deceived or imposed upon the Company, or furnished it with inaccurate information." The appellant makes the point that the trial court erred in setting aside the verdict, and she contends that after the jury answered the questions favorably to her there was no power in the trial court " except to direct the general verdict to which, upon the law, one party or the other was entitled to upon the facts so found by the jury." As we are prepared to accept the jury's findings as based upon sufficient evidence to reach the conclusion that plaintiff and her witnesses told the truth as to what actually occurred, the appellant's argument in this particular respect is of no force. Rather, it is immaterial whether the verdict was set aside or not for the reason that on the law of the case there was no power given to Smith to falsify and to defraud his company.

The legal question confronting us is, assuming a state of facts most favorable to the appellant, was a cause of action established? In other words, is the defendant liable for the wrongful act of its employee, Smith, in permitting the insured to sign an application in blank, despite the plain purport of the instrument calling upon the insured to fill in the designated answers to the questions therein contained. The policy itself contains the provision that " it may be reinstated at any time upon the production of evidence of

insurability satisfactory to the Company." The determination by the defendant of this insurability was upon the basis of the answers to the questions propounded in the defendant's reinstatement application furnished to the insured for that purpose. This application for reinstatement contains this provision: " Application is hereby made for the reinstatement of the above stated policy which lapsed for non-payment of premium due as stated above. I hereby certify that the foregoing statements and answers are correct and wholly true and have been made by me to induce the Metropolitan Life Insurance Company to reinstate the above policy, and I agree that if said Company shall grant such reinstatement the same shall be deemed to be based exclusively upon the representations contained in this request and upon the express condition that if the foregoing statements be in any respect untrue said Company shall, for a period of two years from the date of such reinstatement, be under no liability by reason of the attempted reinstatement of the policy, except that the Company shall return to the insured or his personal representative all premiums paid since the date of said reinstatement."

In *Schrader* v. *John Hancock Mutual Life Insurance Co.* (232 App. Div. 644, 645) it was said " that a material false statement in an application for reinstatement will as effectually void a policy of insurance as a similar statement in the original application itself." (See, also, *New York Life Insurance Co.* v. *Rosen*, 227 App. Div. 79.)

In *McCormack* v. *Securi y Mut. Life Ins. Co.* (220 N. Y. 447) the insured, ill with a fatal malady which had made him helpless for years, received notice on November 12, 1910, of a premium due on December 12, 1910. The premium was not paid in time, but on February 13, 1911, the company wrote suggesting that the lapsed policy be reinstated if there was satisfactory evidence of good health. A Miss Hearley, cashier of the Albany branch office of defendant, gave the wife of the insured a *reinstatement* blank, containing a warranty of good health, to be executed by the insured. When the wife protested that it was impossible for her husband to sign such a statement, Miss Hearley informed her that it was the only form for the purpose which the company issued, and the wife thereupon took it home and after a talk with her husband he signed it and forwarded it to the company, which, upon the representation of good health contained therein, reinstated the policy, Andrews, defendant's general field superintendent, with knowledge of the insured's illness, giving her a receipt for the past due premium with the word " reinstated " on it. The issue was whether the knowledge of the cashier, Miss Hearley, and of the field superintendent, Andrews, was imputable to the

company. The jury found that both of these employees knew of the insured's condition of ill health. The court (per CARDOZO, J., at p. 455) say: " The notice being adequate, there was need of reinstatement. The reinstatement was procured by false representations and warranties. Unless a forfeiture has been waived, the contract will not stand. We are told that the truth was known to Miss Hearley and Mr. Andrews; that their knowledge is to be imputed to the company; and that from this a waiver follows. False representations and broken warranties are not so easily repaired. Neither Miss Hearley nor Mr. Andrews had power to waive forfeitures directly (*Quinlan* v. *Providence W. Ins. Co.*, 133 N. Y. 356). That is substantially conceded. If not conceded, it is established by the policy, which withholds such powers from the agents, and by repeated notices which restrict the power of waiver to enumerated officers. The plaintiff seeks to escape the difficulty through the rule of constructive notice. The argument is that what is known to an agent must be presumed to be known to the principal, and that reinstatement with knowledge imports a waiver by the company itself. But this is not a case where the presumption of knowledge is permissible. The defendant attempted to protect itself from such a presumption by providing in the application for the policy that no statement made to any agent should be admissible in evidence against the company or binding upon it unless actually written in the application over the signature of the applicant (*Chase* v. *Hamilton Ins. Co.*, 20 N. Y. 52; *Ætna Life Ins. Co.* v. *Moore*, 231 U. S. 543, 559). *The letter of that provision may not reach an application for reinstatement, yet it emphasizes the duty of the assured to scrutinize an agent's powers.* There was no genuine attempt here to counteract the fraud by frank disclosure of the truth."

And again (p. 458): " The law of imputed notice has its basis in the presumption that an agent will perform his duty (*Henry* v. *Allen*, 151 N. Y. 1). The presumption is not available for the protection of a wrongdoer who had no reason to expect, and did not intend that there should be, a revelation of the truth (*Mutual Life Ins. Co. of N. Y.* v. *Hilton-Green*, 241 U. S. 613, 623)."

The *McCormack Case* (*supra*) may be distinguished from the present one on the ground that in that case there was a conceded and express misrepresentation, *whereas at bar there was no representation at all, the insured signing a blank form.* But the reasoning of the case is applicable here. The insured, under his policy which he must be deemed to have read, was aware that it was incumbent upon him to furnish *satisfactory evidence of insurability to the company* to secure reinstatement, a condition in the policy which

could not be waived by any agent, the policy so providing. Despite this requirement and despite the plain purport of the application for reinstatement itself, which clearly contemplated execution of the form by the insured, the latter paved the way for a reinstatement based upon falsity. He never gave to the company the evidence of insurability which it exacted and which was required of him. Under the circumstances he must be held bound by the misrepresentations contained in the reinstatement application which he held forth as being made by him, or, in the alternative, to have failed to furnish such evidence as the company required of insurability in accordance with the provisions of the policy.

The case of *New York Life Insurance Co.* v. *Fletcher* (117 U. S. 519) is pertinent. There the claim of the insured was that misrepresentations in the application for insurance were made by the agent as he wrote down answers incorrectly, although the insured dictated the right ones. It was said (pp. 528, 529): " It is, of course, not necessary to argue that the agent had no authority from the company to falsify the answers, or that the assured could acquire no right by virtue of his falsified answers. Both he and the company were deceived by the fraudulent conduct of the agent. The assured was placed in the position of making false representations in order to secure a valuable contract which, upon a truthful report of his condition, could not have been obtained. By them the company was imposed upon and induced to enter into the contract. In such a case, assuming that both parties acted in good faith, justice would require that the contract be cancelled and the premiums returned. * * * It was his [insured's] duty to read the application he signed. He knew that upon it the policy would be issued, if issued at all."

To the same effect is *Insurance Company* v. *Wilkinson* (13 Wall. 222), the opinion in which is approvingly quoted in the last cited case.

On July 3, 1934, we decided the case of *Blatt* v. *New York Life Ins. Co.* (242 App. Div. 684), unanimously affirming a judgment for defendant rendered at the Trial Term where the complaint was dismissed at the close of the entire case. There, as here, the insured signed a reinstatement application *in blank*. He turned it over to his son who in turn delivered it to the company's agent, the son testifying that the questions were not answered at the time of delivery. It was our view that the agent was not empowered by the company to bind it by accepting a reinstatement application containing false answers *or no answers at all* and that the insured, through his son, constituted the agent of the company his own agent. This case (*Blatt* v. *New York Life Ins. Co.*), in principle,

is indistinguishable from the case at bar. On November 27, 1934, the Court of Appeals denied Blatt's motion for leave to appeal to that court.

The judgment should be affirmed, with costs.

Present — LAZANSKY P. J., KAPPER, HAGARTY, SCUDDER and DAVIS, JJ.

Judgment for $492.68 in favor of plaintiff in an action to recover on a policy of insurance in the sum of $20,000 unanimously affirmed, with costs.