The defendant, then a resident of New York City, obtained from complainant its twenty-year endowment life insurance policy dated July 17th, 1930, wherein provision was also made for payment to defendant of disability benefits. Under the terms of the policy, premiums were payable January and July 17th in each year, with thirty-one grace days allowed. The premium due July 17th, 1932, was not paid within the *Page 344 
grace period and the policy lapsed. October 17th, 1932, the defendant, then a resident of this state, made application for reinstatement and complainant granted his application. Default was made in payment of the premium due July 17th, 1933, and it remained unpaid for more than thirty-one days. By application dated August 31st, 1933, defendant, still a resident of this state, made application for reinstatement and thereupon complainant reinstated the policy. April 18th, 1934, defendant applied to complainant for total and permanent disability benefits and in his application stated that his health was first affected by his present disability August 15th, 1933, and that he had consulted a physician that day for his illness. The complainant thereupon filed its bill of complaint in this cause alleging that the policy had lapsed and was not in force when defendant made his application of August 31st, 1933, for reinstatement; that in his application for reinstatement defendant made false answers to questions contained in the application and had failed to disclose that at and prior to the date of such application he was suffering from and was receiving medical treatment for the illness which he now claims caused his permanent disability; that he fraudulently induced complainant to reinstate said policy and its prayer is that the contract of insurance be rescinded and the policy be surrendered for cancellation.
The defendant contends that the contract of insurance is a New York contract and that it did not lapse in consequence of defendant's failure to pay the premium due July 17th, 1933, within the grace period fixed by the policy, because complainant failed to comply with section 92 of the insurance law of New York which provides, in effect, and so far as the section applies to this policy, that no life insurance company doing business in that state shall declare any policy forfeited or lapsed within one year after default in payment of a premium, unless a written notice containing certain specified statements, including the due date of the premium, shall have been mailed to the insured at least fifteen and not more than forty-five days prior to the day the same is payable. It is conceded that the written notice required by this section was not mailed to the defendant. The defendant *Page 345 
argues that therefore the policy was in good standing and had not lapsed when he paid and complainant accepted the arrears of premium after he had made formal application for reinstatement.
The application for the policy was solicited by an agent doing business in New York City and was there signed while defendant was a resident of that city and subsequently the executed policy was delivered by said agent to defendant in said city. Premiums were paid by defendant at complainant's branch office in that city. The application provides that it shall be approved and accepted at complainant's home office in Newark, in this state and that the policy shall be accepted by defendant subject to the provisions therein contained. The application was sent to complainant's home office and was there approved and it was there the policy issued and from there it was sent to the agent in New York City for delivery. The policy is in the standard New Jersey form and states that it and the application contain and constitute the entire contract between the parties. It is dated and recites its execution at Newark. Among the policy provisions are these: that the complainant will pay the amount of insurance upon receipt of proof of death and surrender of the policy at complainant's home office; that accidental death benefits will be paid the beneficiary at said home office; that premiums are payable at said home office, but may be paid to complainant's agent in exchange for an official receipt signed by complainant's president or secretary; that the beneficiary may be changed only by written notice to complainant at said home office and that assignments of the policy must be filed at said home office. In short, nothing to be done by either complainant or defendant under the policy terms is to be done outside this state, except that defendant may exercise the privilege of paying premiums due in this state, to an agent located elsewhere who holds complainant's official receipt issued in this state. Neither the application, nor the policy, nor any statute of this state, require that complainant shall give defendant notice of the due date of premiums and the policy expressly provides that if any premium be not paid when due, the policy shall be *Page 346 
void. Since August, 1931, the defendant has been a resident of this state and process in this suit was served on him at his residence in this state.
The application for the policy was merely a request by defendant that complainant enter into a contract with him and the contract did not come into existence until complainant accepted the application at Newark. Northampton Mutual Live StockInsurance Co. v. Tuttle, 40 N.J. Law 476; Hemhauser v.Metropolitan Life Insurance Co., 106 N.J. Eq. 15. On the facts it appears that complainant and defendant intended that the policy contract when issued should be performed in New Jersey and that such performance should be governed by the laws of this state; therefore the New York statute does not apply (OrientInsurance Co. v. Rudolph, 69 N.J. Eq. 570; Ball and Hill v.Consolidated Franklinite Co., 32 N.J. Law 102; Campbell v.Nichols, 33 N.J. Law 81; Northampton Mutual Live Stock InsuranceCo. v. Tuttle, supra; Mayer v. Roche, 77 N.J. Law 681;Basilea Calandra v. Spagnuolo, 80 N.J. Law 88; Equitable LifeAssurance Society of United States Co. v. Nixon,81 Fed. Rep. 796; Equitable Life Assurance Society of United States Co. v.Trimble, 83 Fed. Rep. 85; Pritchard v. Norton, 106 U.S. 124;Mutual Life Insurance Co. v. Hill, 193 U.S. 551) and the policy had lapsed prior to August 31st, 1933, when defendant made application for its reinstatement.
As has been stated, written application for reinstatement was made two weeks after the policy had lapsed. Defendant signed an application which certified that the statements and answers therein were true and correct and were made to induce complainant to reinstate the policy and that defendant agrees that the policy should not be in force until complainant had formally approved the application and that if complainant granted reinstatement, the same should be deemed to be based exclusively upon the representations contained in the application. The application purports to show that to the question, "are you now in good health?" the defendant answered, "yes," and to the question, "have you since the date of the issue of this policy had any illness or *Page 347 
injury, or had any medical or surgical treatment at home, hospital or elsewhere? If so, when?" he answered, "no." The defendant admits that at the date of said application he had epilepsy, his first attack having occurred in April, 1933; that from the time of his first attack to the time of making said application, he had had medical treatment for that disease at home, at a physician's office and at a hospital. If he answered said questions in the manner stated, his answers were false and were known by him to be false and were made with intent to deceive complainant. The defendant contends that complainant's agent who attended to the preparation and filing of the reinstatement application knew that defendant's condition of health was bad and that he was receiving medical treatment; that said agent did not ask him any of the questions contained in the application; that he merely signed the application at the agent's direction and left it to the agent to write in such answers to questions as he (the agent) saw fit. Without discussing the testimony relating to such contention, I will say that I do not believe complainant's agent had knowledge of defendant's condition of health at the time the defendant signed the application, nor do I believe defendant signed the application in blank. I believe defendant was asked the questions contained in the application; that the agent recorded the answers given by defendant and that defendant then signed the application.
If the agent knew of defendant's illness and of the medical treatment therefor, the answer to defendant's argument that the agent's knowledge must be imputed to complainant as his principal and operates as an estoppel against complainant, is two-fold. First, the policy had then lapsed and the agent was without power to waive the forfeiture. The policy provides that no condition, provision or privilege of the policy can be waived or modified except by an endorsement thereon signed by an officer of complainant and that no agent has power on behalf of complainant to waive any forfeiture, or to bind complainant by making or receiving any representation or information. I think that complainant is thus protected against the presumption now urged by defendant, that notice to the agent was notice to the complainant, especially *Page 348 
when the defendant knew that in reinstating the policy, complainant would rely solely upon representations made over defendant's signature. McCormack v. Security, c., Co.,220 N.Y. 447. Second, if the agent can be assumed to be complainant's agent for the purpose of communicating to his principal all essential facts which came to his knowledge in the course of the preparation of the application, such assumption should run only for the protection of an innocent applicant who suffers by reason of the failure of the agent to disclose his knowledge to his principal. The defendant's argument seems to be that the agent colluded with defendant to defraud complainant. If that be so, then the agent ceased to be complainant's agent because he was acting in defendant's behalf. The defendant had made a previous written application for reinstatement wherein he had made answer to questions similar to those contained in his second application and he must have known that complainant would rely on the answers contained in his second application in determining whether or not to grant reinstatement. He had had the policy in his possession and he is presumed to have known of the provision therein that if the policy be lapsed for non-payment of premium, it could be reinstated only upon production of evidence of defendant's insurability satisfactory to complainant. If he permitted the agent to supply false information to complainant, his collusion with the agent went to the extent of agreeing that the agent should not inform complainant of the falsity of the answers, whether such answers were actually made by defendant or by the agent and he is bound by the untrue answers contained in the application. Moreover, if defendant did not personally answer such questions, he failed to furnish satisfactory evidence of his insurability as required by the policy for reinstatement.Axelroad v. Metropolitan Life Insurance Co.,275 N.Y. Supp. 268.
Decree will be entered for complainant. *Page 349