The defendant, on August 12th, 1930, issued to the complainant a "non-cancellable disability policy for accident and sickness." Under the terms of the policy, the complainant was to receive $200 a month for total disability; seventy-five per cent. of that was three-fourths partial if the insured was able to work twenty-five per cent. of the day; fifty per cent. partial if the insured was able to work one-half of the day. The policy provided that the insured was not entitled to compensation for the first fourteen days of disability; partial disability was not payable unless the insured was entitled to recover for total disability; premiums were payable quarter-annually; the insured was not entitled to payment unless he was regularly attended by a physician; the insured could not recover partial disability for more than an aggregate of twelve months for any continuous disability. The policy contained a "hospital indemnity rider" which paid the insured total disability for the portion of the fourteen-day waiting period so long as he was confined continuously to a hospital.
The complainant was disabled, and collected under the policy for total and partial disability — payments totaling $1,106.66. On January 18th, 1932, he was taken ill and removed to a hospital. The evidence discloses that an operation was advised for the removal of an appendix and an epigastric hernia. The operation was performed, and in the course of it the doctors discovered that the patient had abdominal adhesions. They treated the hernia but did not remove the appendix. A few days after the operation the doctors discovered, through X-rays, the presence of two calculi or stones in the patient's urethral regions. A cystoscopy operation was performed. The patient remained totally disabled and was unable to perform his duties as a dentist until October 24th, 1932. He went to work under a seventy-five per cent. partial disability until November 28th, 1932, *Page 463 
when the disability decreased to fifty per cent. He remained under this partial disability until January 27th, 1933, when he again became totally disabled. He suffered from pains which have been described as frequent and severe; he was unable to perform the duties of his profession.
His physician advised him to go to Pleasantdale to recuperate, rest and relax. He went to Pleasantdale. After spending a week or ten days there and not receiving expected benefit, he again visited his doctor, who then advised him to go to Florida where the warmth and sunlight, together with relaxation, would afford him relief. On February 9th, 1933, he went to Florida. Before undertaking the trip, he informed his physician that he had an opportunity of traveling by automobile with a friend, and because of economic reasons, he preferred that method of transportation. He was thereupon advised that such means of transportation might occasion a reoccurrence of pain, but that there was no danger attending such a trip if care were used. The doctor then gave him codeine sulphate to alleviate any pains that might develop during the trip. On February 9th, 1933, he traveled to Florida by automobile. The trip to Florida took between five and six days; several times he had to stop traveling because of pains. His stay in Florida relieved him somewhat, except on one occasion when he had severe pains. He remained in Florida until March 17th, 1933, when he returned north. Upon his return he went back to work on a fifty per cent. basis and remained disabled on a fifty per cent. basis from March 24th, 1933, to November 9th, 1933, when another total disability occurred.
On November 9th, 1933, he was confined to a hospital with a four-day total disability. Thereafter, he remained fifty per cent. disabled and continued to so remain until February 16th, 1934, when the policy he held in the defendant company was canceled by it.
Complainant's original partial disability commenced on October 24th, 1932, and if such disability continued, he would be entitled to an indemnity to October 24th, 1933. In order to break up the continuity of the indemnity for partial disability there must be evidence to the effect that the patient *Page 464 
sometime during the twelve-month period had fully recovered from his disability. The defendant says that from February 9th, 1933, to March 24th, 1933, the complainant was not totally disabled. Its contention is based upon the fact that he undertook the trip to Florida and was not attended regularly by a physician. Its counsel argues:
"By corollary it must be found that if the complainant was no longer disabled after February 8th, 1933, and was not entitled to any moneys until he returned home again on the 17th of March, we come to the other section of the policy, viz., `No total or partial indemnity payable unless preceded by fourteen days of continuous total disability.'
"In other words, the complainant no longer being disabled after February 8th, 1933, he would again be obliged to be continuously totally disabled for fourteen full days before he could again collect partial indemnity under the policy."
I do not quite understand how the reasoning of defendant's counsel, as just quoted, can affect complainant's rights under the policy. The evidence is uncontradicted that on February 9th, 1933, the complainant was disabled. On June 23d 1933, the defendant company sent a draft for $180 to him, which contained a written condition thereon that it was in full settlement of complainant's claim. Complainant refused to accept the draft and notified the company to that effect. The defendant admits receiving this notice of refusal. The $180 draft is based on complainant's proof of claim for fifty per cent. partial disability from December 29th, 1932, to January 27th, 1933, a period of thirty days, entitling him to $100. The defendant contends that the complainant is entitled to receive only from the last mentioned date to February 8th, 1933, a total of twelve days, for which the sum of $80 is allowed by the defendant. These two sums totaling $180 is all that the complainant is entitled to according to the defendant. The draft for the last mentioned sum is, in effect, an order of one department of the defendant company upon another of its departments, to pay the insured. Its terms were never accepted, but were absolutely refused, and the company was so notified.
On February 12th, 1934, the quarterly premium of $36.11 *Page 465 
fell due. The complainant mailed and delivered a check to the defendant's local agent in Newark. The defendant company deposited the check in the usual course of business. Subsequently, it was returned by the complainant's own bank protested; the reason appended thereto being "insufficient funds." The defendant, on February 26th following, canceled the complainant's policy. The complainant claims that the defendant company owed him moneys for which he filed proofs of claim. He emphasizes the fact that the defendant company admittedly held $180 belonging to him, which they acknowledged by forwarding to him the alleged draft.
The complainant contends that the draft was not a legal payment to him; that the company's liability on the draft would arise if and only when accepted. He recites the case of National UnionFire Insurance Co. v. Mellon National Bank (Pa.),119 Atl. Rep. 910, in which the court said:
"When the drafts were accepted by the insurance company, they became valid, negotiable instruments." Timmerman v. Bankers'Reserve Life Co. (Texas, 1933), 63 S.W. Rep. 2d 687.
The complainant further contends that the defendant, on the 12th day of February, 1934, was indebted to him in the sum of $180, and that it, therefore, was under a legal and equitable duty to prevent a forfeiture of the policy. I can find no case in point in this state. In Reliance Life Insurance Co. v. Hardy,144 Ark. 190; 222 S.W. Rep. 12, 13, the court said:
"Appellant's contention cannot be sustained for the reason that the undisputed evidence shows that on November 3d 1917, it had the sum of $20 in its hands belonging to Hardy, which sum exceeded the amount that was then due the appellant for the premium on the policy in suit. It is of no consequence that this fund accrued to Hardy under the provisions of a different policy from that in suit. The policies were issued on the same day and were between the same parties; but even if that were not true, and if the appellant had in its possession funds belonging to Hardy derived from any source whatsoever, it was the duty of the appellant, in the absence of instructions from Hardy that he desired the use of the *Page 466 
funds for some other purpose, to appropriate the same for the payment of his premium when it became due in order thereby to prevent forfeiture of the policy."
The case of North American Accident Insurance Co. v. Bowen
(Tex.App.), 102 S.W. Rep. 163, was cited by the TimmermanCase, supra, and the court there observed:
"It appeared that the insurance company was liable to Bowen for a prior accident, but the extent of the liability had not been determined. The minimum amount for which the company could be liable, however, was sufficient to pay the remaining premium notes owed by Bowen. The court held that it was the duty of the company to apply so much of the sum due the insured to the unpaid notes as was necessary to prevent a forfeiture of the policy."
To the same effect is the case of Missouri State LifeInsurance Co. v. LeFevre (Tex. Civ. App.), 10 S.W. Rep.
2d 267, 270. In this case the court said:
"The law does not favor forfeitures, and will decline to enforce them whenever it is against equity and good conscience to do so. We think it would be inequitable and unjust, under the circumstances of this case, to hold the insurance forfeited for non-payment of the premium due April 8th, when appellant, in effect, had in its possession disability funds belonging to the assured sufficient to pay said premium."
It will be noted that on February 12th, 1934, the draft was still outstanding and had not been presented for acceptance, although it had been issued approximately eight months before. The company knew it had not been accepted up to that time, or subsequently. It still holds the $180. I think, under the circumstances, that the defendant could have, and should have, deducted from the sum of $180 it held for the complainant, the premium of $36.11 which became due on the last mentioned date, and thereby kept the policy in force. It seems to me, under the circumstances, that it would be highly unfair and grossly inequitable to permit the defendant to cancel the policy.
I shall advise a decree to conform with the relief prayed for. *Page 467