Complainant seeks to compel defendant Lola Parker Marvin, hereinafter referred to as Mrs. Marvin, to specifically perform a written agreement, under which she undertook to pay to complainant the amount of a judgment obtained by it against Mrs. Marvin as executrix of the estate of her deceased father, Arthur Parker, and for an accounting against the defendants Finn and Blitz, administrators cum testamento annexo of the estate of said Arthur Parker, deceased, as well as for an injunction against Finn and Blitz from collecting certain moneys due and to grow due to Mrs. Marvin under the provisions of a certain life insurance policy taken out by Mr. Parker in his lifetime, whereof Mrs. Marvin, as beneficiary, became entitled on the death of her father.
The facts are stipulated by the parties and briefly are that Mrs. Marvin qualified as executrix under the will of her father; that at the time of his death he was indebted to complainant, as well as to others; that Mrs. Marvin permitted her husband to manage the Parker estate and that he mismanaged it to the extent that it was finally declared insolvent; that complainant became aware of the mismanagement aforesaid and prior to the time of the order declaring the estate insolvent was entered, filed a petition in the Orphans Court to remove Mrs. Marvin as executrix; that prior to the filing of the petition for removal, complainant obtained a judgment against Mrs. Marvin as executrix in the sum of $1,960, being the amount due complainant from the Parker estate; that with said judgment outstanding, on which execution had been issued, and with the removal proceedings still pending, Mrs. Marvin agreed with complainant to guarantee the payment of its judgment and to that end she gave her promissory note in the amount of the judgment *Page 78 
indebtedness and assigned to complainant "sufficient moneys due to me by The Penn Mutual Life Insurance Company under policy No. 1045743 to pay the amount of said judgment" and in addition to the assignment, in the same writing Mrs. Marvin appointed Kirkman Mulligan, attorneys of the complainant, as her attorney-in-fact to receive the monthly installments of $25.18 to which she was entitled as the beneficiary named under the policy aforesaid, with further power to Kirkman Mulligan "to endorse my name thereon and to do any and all acts necessary pertaining to the same" so as to secure to complainant the receipt of these monthly checks; that Mrs. Marvin duly notified the Penn Mutual Life Insurance Company to forward said monthly checks to Kirkman 
Mulligan as her attorneys and that in pursuance of that notice the Insurance Company paid to Kirkman Mulligan a total of $119.08; that thereafter another creditor petitioned the Orphans Court for the removal of Mrs. Marvin as executrix by reason of her mismanagement of the estate; that she was removed by appropriate order of the Orphans Court and that Finn and Blitz were appointed substitutionary administrators cum testamentoannexo; that Mrs. Marvin thereafter executed another power of attorney to Finn and Blitz authorizing them, as her attorneys, to collect the insurance installments aforesaid; that Mrs. Marvin notified the Penn Mutual Life Insurance Company of the revocation of the Kirkman Mulligan power of attorney and the new power of attorney to Finn and Blitz, and that thereafter all installments were paid to Finn and Blitz, who are depositing them to the credit of the Parker estate; that Finn and Blitz had Blitz had full knowledge of the prior assignment and power of attorney to Kirkman Mulligan.
It is quite apparent from the foregoing abridgment of the stipulation of facts that Mrs. Marvin, as consideration for her assumption of the payment of complainant's judgment against her father's estate, secured from the complainant the withdrawal of the proceedings to remove her as executrix, as well as further proceedings looking toward the collection of the judgment against the estate.
The beneficiary clause of the insurance policy, by virtue of *Page 79 
which Mrs. Marvin became entitled to the monthly installments, contained this provision:
"No beneficiary or assignee hereunder shall have power of commutation, alienation or assignment of the installments, or any of them, unless by the written permission of the insured, anything contained in said Installment Tables Section to the contrary notwithstanding."
It is contended by the defendants that Mrs. Marvin was not legally capable of making a valid assignment of the installments and that any power of attorney given by her was subject to revocation at her will.
Defendants say that in order to determine these questions the court must resort to the law of Pennsylvania, and citePrudential Life Insurance Co. v. Milonas, 118 N.J. Eq. 343;179 Atl. Rep. 107, as authority therefor.
The last pronouncement of the Court of Errors and Appeals isMetropolitan Life Insurance Co. v. Lodzinski, 122 N.J. Eq. 404; 194 Atl. Rep. 79, wherein the court, speaking through Mr. Justice Bodine, said (at p. 406):
"Since the policy was applied for, issued and delivered in this state, where the applicant resided and where she remained until her death, the law of this state governed the construction thereof. John Hancock Mutual Life Insurance Co. v. Yates,299 U.S. 178; 57 Sup. Ct. Rep. 129."
An examination of the record in the Lodzinski Case discloses that a resident of New Jersey made application while residing in New Jersey for an insurance policy to be issued by a company whose home office was in New York City; that the policy was executed in New York at the home office of the Insurance Company and delivered to the insured in New Jersey; that the policy was payable "at its home office in the City of New York," the premiums were payable at the "home office," with privilege to pay to an "authorized agent" in New Jersey "only in exchange" for an official premium receipt "signed by the president * * * counter-signed by the agent in New Jersey." It also provided for a change in premium payments "on written request, approved by the Company at its home office." Also for change of beneficiary by filing written notice at the "home office" and assignment *Page 80 
through the "home office" and that the Company should incur no liability until the application for the insurance be "received, approved and the policy issued and delivered."
Similar provisions as those above are contained in the policy in the case at bar, so that the law as stated in the LodzinskiCase is applicable and, while counter to the holding in thePrudential-Milonas Case, is binding on this court.
Under the laws of New Jersey, did Mrs. Marvin have a right to assign moneys due or to grow due to her as beneficiary?
It may be noted that under the terms of the assignment, Mrs. Marvin assigned "sufficient moneys due to me * * * to pay the amount of said judgment." She does not assign her interest as beneficiary in the entire proceeds of the policy. She does assign moneys coming to her as beneficiary, as the installments become due to her, and she authorizes her attorneys to receive the payments, endorse her name on the checks and apply them to the liquidation of the debt. The assignment to complainant is not operative until the installments become due and Mrs. Marvin has a right to receive them from the insurer and in order to make the assignment operative as between Mrs. Marvin and complainant, she appoints her attorneys to "receive these said monthly payments" so as to secure to complainant "the receipt of these monthly checks," in satisfaction of the judgment, and when that is paid, both the assignment and power of attorney are at an end and she continues to receive the installments in her own right, and it will be further noted that in the event of her death during the time the monthly installments accrue, that the assignment and power of attorney terminate and the future installments go as directed under the terms of the beneficiary clause.
The conclusion that the New Jersey law is applicable to the facts in this case necessarily disposes of defendants' contention that Mrs. Marvin was precluded from assigning or otherwise alienating the moneys to grow due to her after they became due under the terms of the policy, unless the policy of the laws of this state prevent. Under the statutes of Pennsylvania she may have been so prevented, and it also *Page 81 
seems clear that under the decision of the Pennsylvania courts spendthrift trusts are recognized as being valid. Counsel for defendants concedes that he knows of no New Jersey case passing on the validity of spendthrift trusts, apart from the statutes, and the author of the notation on the validity of such trusts,119 A.L.R. 58, so states.
The result is that there is no statute in New Jersey denying Mrs. Marvin the right to have executed the assignment and power of attorney to complainant, and her power of alienation is not against any declared public policy of the state, and it is not the province of this court to declare such a policy. It is a matter for the legislature. Dimick v. Metropolitan LifeInsurance Co., 69 N.J. Law 384; 55 Atl. Rep. 291; Bigelow v.Old Dominion Copper, c., Co., 74 N.J. Eq. 457;71 Atl. Rep. 153; Hardenburgh v. Blair, 30 N.J. Eq. 645.
From what has been said, it clearly appears that we are not dealing with a situation wherein a trust has been created. We are dealing with the right of a beneficiary under a life insurance policy to deal with installments owing to her under a contract after those installments become due. In Pennsylvania it required a statute to enforce the provisions of such a clause as is contained in the policy in the instant case. See Act of April26th, 1923; P.L. p. 104 (40 P.S. ¶ 514). In New Jersey we have no such statute.
In the case at bar there was no trust created as between the insurer and insured, but a mere contract on the part of the Insurance Company to pay the beneficiary after the death of the insured. The installments are not trust funds. McLaughlin v.Equitable Life Assurance Society, 112 N.J. Eq. 344;164 Atl. Rep. 579. The installments, as they become due, are subject to execution. Harcum v. Greene, 111 N.J. Law 129;166 Atl. Rep. 717.
Notwithstanding the fact that the beneficiary was restrained from anticipating or alienating the installments, each one thereof became absolutely vested in her as it became due and was subject to her disposition and control, this even though the installments constituted trust funds. See Camden Safe Depositand Trust Co. v. Schellenger, 78 N.J. Eq. 138;78 Atl. Rep. 672. *Page 82 
In 6 Couch on Insurance § 1459, it is stated:
"In keeping with the established principle that nearly all matters and rights arising ex contractu are assignable it is the quite generally accepted rule that a policy of insurance or a claim accrued thereunder may effectively be assigned after loss or death so as to vest in the assignee an absolute right to the insurance."
It is further stated:
"General stipulations in policies prohibiting assignment thereof, except with the insurer's consent, or upon giving some notice or like conditions, have universally been held to apply only to assignments before loss, and accordingly, non-compliance or non-conformance therewith does not prevent an assignment, after loss, of the claim or interests of the insured in the insurance money then due in respect to the loss."
It is further stated:
"Again, even assuming that a stipulation against assignment is intended to apply to an assignment after loss, it has been held that it could not destroy the right to appoint the person to receive or sue for the insurance money."
In Riggin v. Cumberland National Bank of Bridgeton, 125 N.J. Eq. 221; 4 Atl. Rep. 2d 285, the Court of Errors and Appeals held that disability benefits under an insurance policy constituted a property right and "therefore is assignable."
We have, then, two successive assignees, each claiming the installments to grow due after they become due, and the holder of the last assignment in point of time having had full knowledge of the prior assignment and all of the circumstances attending that assignment, i.e., not only knowing that the assignment had been made to the prior assignee, but that it had been executed for a good and valuable consideration.
In Moorestown Trust Co. v. Buzby, 109 N.J. Eq. 409;157 Atl. Rep. 663, it is held that "a subsequent assignee takes nothing by his assignment because the assignor has nothing to give," and in that case it was further held that notice of the assignment to the debtor added nothing to the right or title transferred. *Page 83 
In Jenkinson v. New York Finance Co., 79 N.J. Eq. 247;82 Atl. Rep. 36, it is held: "In the absence of statute, the maxim, `the first in order of time is the strongest in law,' applies to the successive assignments of equitable interests in land as well as to the transfer of legal interests."
In the instant case there is an assignment of the monthly installments after they become due, coupled with a power on the part of the assignee to collect the installments and apply them to the liquidation of complainant's debt against the assignor. It would therefore appear that the assignment and power of attorney created an interest on the part of the assignee and that the assignment and power of attorney, having been based on a valuable consideration, there is no power on the part of the assignor to revoke the agency. See Hill's Ex'rs v. Day, 34 N.J. Eq. 150,
as cited in 2 C.J.S. 1160 and (at p. 1164), wherein it is stated:
"An authority granted for a valuable consideration takes away both the right and the power of the principal to revoke the agency and creates a power coupled with an interest."
See, also, Miller, Receiver, v. Home Insurance Co.,71 N.J. Law 175; 58 Atl. Rep. 98.
Surely the facts of the present case would not tend to equitable interference in favor of either Mrs. Marvin or Finn and Blitz. Between complainant and these defendants, the equities are on the side of complainant. Mrs. Marvin agreed to pay the judgment held by complainant. It is not her debt, to be sure, but she received a valuable consideration for her guarantee, in that complainant accepted a note from her for the amount of the judgment, foregoing its rights thereunder and withdrew its petition to have Mrs. Marvin removed as executrix. The stipulation shows that Mrs. Marvin, at the time of this transaction, believed that the assets of her father's estate would be sufficient to pay the judgment, but that this belief was brought about by the misrepresentations of her husband as to the true financial condition of the estate. There is nothing to connect complainant with this deception. Mrs. Marvin relied on the statements of her husband and not those of the complainant or its agents. *Page 84 
Mrs. Marvin having guaranteed complainant the payment of its judgment, and having received the benefits thereof, again found herself beset by another creditor of the estate, who petitioned for her discharge as executrix, whereupon she chose to repudiate her arrangement with complainant and to attempt to divert the proceeds of the insurance policy to the payment of the creditor of her father's estate instead of to the payment of complainant's judgment. Of course, the estate of her father was then known to be insolvent, but complainant had not received any preference over other creditors out of assets belonging to the estate. It had secured payment of its claim out of assets belonging to Mrs. Marvin, individually. The defendants Finn and Blitz had full knowledge of the prior assignment and the power of attorney to complainant and, in fact, Mr. Blitz took the acknowledgment of Mrs. Marvin to the assignment of June 24th, which was superseded by that of May 28th, 1940. The assignment to Finn and Blitz was made in November of 1940 and they took subject to the rights of complainant.
Complainant is entitled to relief; the power of attorney executed to Finn and Blitz to be decreed to be subject to the prior assignment and power of attorney to Kirkman Mulligan and of no force or affect as against them; and the defendants to be enjoined and restrained from asserting to the contrary; and Mrs. Marvin to be decreed to comply with this decree and her agreement with complainant to forthwith notify the Penn Mutual Life Insurance Company of Philadelphia of the cancellation of the power of attorney to Finn and Blitz and the reinstatement of the power of attorney to Kirkman Mulligan. *Page 85