The complainant issued its policy of insurance November 27th, 1939, on the life of Kalman Hefner whereby it promised to pay $1,500 to defendant on the death of the insured, *Page 337 
provided the policy was maintained in force by payment of premiums thereon made in accordance with the terms thereof. The policy lapsed because of non-payment of the initial premium but was reinstated January 13th, 1940, on the insured's application. On August 27th, 1940, a quarterly premium of $18.98 became due and was not then paid, nor was payment made within the grace period allowed by the policy, which grace period expired September 27th, 1940. On October 7th, 1940, complainant received by mail at its Jersey City branch office defendant's check for the amount of the unpaid premium and at once deposited the check in its bank account for collection; it was honored by the bank on which it was drawn October 9th, 1940. The day complainant received and deposited the check it wrote the insured in a letter mailed that day to him, "We are unable to report this premium as the grace period has expired and health form is now necessary" and enclosed a health form entitled "Application for reinstatement," with instructions as to the manner of its execution. The letter further stated, "when complete, return form to this office and we will give the matter our further attention." The insured executed the application form October 9th, 1940, and returned it to complainant by mail, who received it October 11th, 1940, and relying on the truth of the statements therein, reinstated the policy. The insured died November 13th, 1940, of coronary thrombosis with myocardial decompensation and coronary sclerosis.
In the application for reinstatement the insured requested reinstatement of his policy which (he therein stated) "has lapsed for non-payment of a premium," upon condition of the truth of the statements made in the application. He stated therein that he was then in sound health and that since the premium in default had become due, he had had no injury, ailment, illness or disease or symptoms of such, and had not consulted or been treated by a physician or other practitioner. The undisputed facts, however, are that from the end of August, 1940, the insured had been under almost constant treatment of a physician and that from September 4th to September 17th, 1940, he had been a hospital patient, the nature of his illness being myocardial decompensation and *Page 338 
angina pectoris. There can be no doubt that had complainant been aware of those facts it would not have reinstated the policy. It did not discover them until some time after the insured's death, whereupon it promptly declared the reinstatement void and tendered return of the premium defendant had paid by her check of October 7th, 1940. It declined to pay the amount of the policy and defendant brought suit at law for recovery of the same, which suit has been restrained pending the determination of the issues in this cause.
Defendant ignores the insured's application for reinstatement of the policy and contends that receipt by complainant of her check of October 7th, 1940, for the amount of premium under the then lapsed policy and the deposit of that check in complainant's bank account, was a waiver of complainant's right to forfeit the policy and that the policy was therefore in effect at the death of insured. In support of her contention the following cases are cited: Bohles v. Prudential Insurance Co., 84 N.J. Law 315;Kozloski v. Prudential Insurance Co., 95 N.J. Law 101; Ciccone
v. The Colonial Life Insurance Co., 110 N.J. Law 276; Barbera
v. John Hancock, c., Insurance Co., 127 N.J. Law 122. Those cases hold that the forfeiture provision in a policy is not self-operating but that the insurer may take advantage of it and declare a forfeiture, or it may waive the forfeiture and receive payment of a past-due premium after expiration of the time fixed by the policy; that an unconditional acceptance of premium after the due date thereof will constitute a waiver of default. Here the action of complainant on receiving the unsolicited premium shows that it did not intend to accept the payment unconditionally, or to waive its right to declare the policy forfeited. It promptly sent the insured a form of application for reinstatement in which it is stated that the policy had lapsed for non-payment of premium and it accompanied that form with a letter stating that its Jersey City office was unable to report the premium to its home office and that an enclosed health form was necessary; it held the money received from defendant subject to determination on the completion and return of the application, whether to reinstate the policy and apply the payment to the past-due *Page 339 
premium, or to insist that the policy had lapsed and return the premium. The insured knew because of a previous experience, that his policy had lapsed for non-payment of premium and could be reinstated only on his application therefor. That he understood the policy had lapsed again and that its reinstatement depended on whether his application disclosed him still to be an insurable risk, is shown by the fact that he did execute and return the application wherein he fraudulently concealed facts which he must have known would preclude reinstatement had he disclosed them. It was on the faith of that application and not until after its receipt that complainant applied the payment made by defendant to the past-due premium and then only because the insured, by false statements, had led complainant to believe that he was entitled to have the forfeiture waived and the policy reinstated. I conclude that complainant by receiving and retaining the payment of past-due premium did not, under the circumstances here present, waive its right to declare the policy forfeited. NewYork Life Insurance Co. v. Weiss, 133 N.J. Eq. 375.
The reinstatement of the policy which had lapsed for non-payment of premium, having been procured by insured's gross fraud, complainant is entitled to rescission and cancellation thereof. Acacia Mutual Life Association v. Kaul, 114 N.J. Eq. 491; Prudential Insurance Co. v. Milonas, 118 N.J. Eq. 343; NewYork Life Insurance Co. v. Weiss, supra.
Defendant contends that when the premium fell due on the policy here under consideration, complainant had in its hands accumulated dividends belonging to the insured on other policies on his life, which accumulations it was under a duty to apply in payment of said premium and thus avoid a forfeiture of the policy, and in support of such contention the case of Ruderman
v. Massachusetts Accident Co., 118 N.J. Eq. 461; affirmed,120 N.J. Eq. 251, is cited.
It is a fact that at the time the premium on the policy in suit fell due the insured held two other policies on his life issued by complainant in the amounts of $1,000 and $2,000, respectively, the one issued October 30th, 1923, and the other issued May 2d 1927, in both of which the defendant herein *Page 340 
was designated as beneficiary. The first policy was an endowment policy maturing in twenty years and the second was a straight life policy containing total and permanent disability provisions. In his application for the first policy, the insured had elected to have the dividends thereon applied to reduce the premiums payable thereunder. In his application for the second policy he had directed that dividends be left to accumulate. When the premium on the policy in suit fell due, dividends on at least one of the two other policies had accumulated to an extent sufficient to pay the premium here in question, but the insured had not requested complainant to apply the accumulations under the other policies to pay that premium. On the policy here in suit there were no accumulations of dividends or interest and the only indication that the insured desired the policy in suit to be kept alive was the receipt by complainant of defendant's check after that policy had lapsed. That check also indicates that the insured did not desire complainant to apply other funds in its hands to payment of the premium.
In the Ruderman Case the question involved was whether the insurance company was under a legal and equitable duty to prevent forfeiture of its policy for non-payment of premium, by applying funds in its hands accrued under that policy in an amount sufficient to satisfy such premium, and this court held that the insurance company should have applied such accumulated funds so as to prevent forfeiture. In affirming the decision of this court, our Court of Errors and Appeals stated that it was in accord with the holding in this court under the circumstances of the case (thus limiting its affirmance to the particular facts there present) and it cited the case of Bushko v. First Uhro,c., Benefit Society, 106 N.J. Law 504, as in line with its holding.
In the Ruderman and Bushko Cases the Court of Errors and Appeals held that the insurer should have applied funds in its hands arising out of the particular policies which were the subject-matters of those suits, to the payment of premiums on those policies so as to prevent them from lapsing for non-payment of premiums. Neither case involved the question of the duty of an insurer to apply funds in its hands arising *Page 341 
under a policy other than the one sued on, so as to prevent lapsing of the latter policy.
In the Ruderman Case in this court (118 N.J. Eq. 461) the Vice-Chancellor cited the case of Reliance Life Insurance Co.
v. Hardy, 144 Ark. 190, holding it to be the duty of an insurance company to apply funds in its hands belonging to an insured under the provisions of a different policy than the one in suit, to the payment of premium due on the policy in suit so as to prevent forfeiture of the policy sued on. I cannot subscribe to that holding. If an insured holds more than one policy issued by his insurer and desires to have dividends accumulating on one policy applied to pay premiums accruing on another policy, I believe it to be the duty of the insured to make request or give direction to the insurer accordingly, and not leave it to the insurer in default of such direction, to determine what the insured's desire in that respect might be. This is especially so when the insured has already given other and contrary direction to the insurer as to how such accumulated dividends should be applied. In the instant case the insured had two policy contracts with complainant of some years standing when he applied for and received the third policy contract which is the subject of this suit. After receiving the policy in suit and paying only three quarterly premiums thereon he may well have decided, for any reason, that he did not desire to continue that policy in force any longer, as for instance that he found he could not afford to pay premiums on three policies. He was under no obligation to continue to pay premiums on his third policy and the only effect of non-payment would be that the policy would lapse at a time when there had been no accumulations thereon and it had no surrender value. When, by failing to pay the premium on the policy in suit within the time fixed, the insured had shown his desire that the policy should lapse, I cannot understand on what theory it can be held that complainant should have said, "We will not permit you to lapse your policy and we will take some of your funds accrued under one of your other policies, or some from one and some from the other, and apply such funds to keep the third policy alive, although it may be contrary *Page 342 
to your desire that we should do so." Judge v. PrudentialInsurance Co. (Pennsylvania), 184 Atl. Rep. 543; Peters v.Colonial Life Insurance Co. (Pennsylvania),193 Atl. Rep. 460; Elton v. Northwestern National Life Insurance Co.,192 Minn. 116; Rundle v. Northwestern National Life Insurance Co.
(North Dakota), 259 N.W. Rep. 43; Gardner v. National LifeInsurance Co., 201 N.C. 716; Harden v. Occidental LifeInsurance Co., 206 N.C. 230.
The contracts as evidenced by the two earlier policies govern the manner in which dividends or other accumulations on those policies should be applied, and any different application by complainant would have been a variation of the contract rights of the insured and of the insurer. Williams v. Union Central LifeInsurance Co., 291 U.S. 170; Northwestern Life Insurance Co. v.Canon (Texas), 110 S.W. Rep. 2d 588; Thomas v. NewYork Life Insurance Co., 81 Fed. Rep. 2d 614; State LifeInsurance Co. v. McNeese (Indiana), 19 N.E. Rep. 2d854; Dougherty v. Mutual Life Insurance Co. (Missouri),44 S.W. Rep. 2d 206; Price v. Northwestern Mutual LifeInsurance Co., 113 W. Va. 683; Reynolds v. Equitable LifeAssurance Society (Pennsylvania), 15 Atl. Rep. 2d 464;Poe v. Penn Mutual Life Insurance Co., 32 F. Supp. 166;Manufacturers Trust Co. v. Equitable Life Assurance Society,279 N.Y. Supp. 457.
I conclude that complainant was under no duty to insured and had no right to apply funds in its hands which had accrued on its other policies on insured's life, to payment of premium on the policy in suit and that complainant is entitled to the relief it seeks, namely a decree cancelling the policy in suit and restraining defendant from prosecuting her pending action against complainant on said policy and from instituting any other action thereon against complainant. *Page 343